### Joe McConico v. The State.

#### No. 988. Decided January 25, 1911.

**1.—Misdemeanor Theft—Evidence—Waybill—Office Records.**

Upon trial of theft of six pairs of overalls, where the evidence did not directly identify the alleged stolen property, and the State sought to prove the same by a certain way-bill, and the record of the office of the shipper of said goods without showing that these records and the said way-bill were correct and obtained from the proper source, the same was reversible error.

**2.—Same—Charge of Court—Want of Consent.**

Where, upon trial of theft of six pairs of overalls, there was no testimony as to the want of consent of the alleged owner, and the court failed to charge the jury as requested by the defendant that the alleged taking must have been done without the consent of the alleged owner, and there being no evidence of want of consent to instruct an acquittal, there was reversible error.

Appeal from the Criminal District Court of Harris. Tried below before the Honorable Norman G. Kittrell.

Appeal from a conviction of misdemeanor therft; penalty, a fine of $200 and thirty days confinement in the penitentiary.

The opinion states the case.

*Thompson & Switzer,* for appellant.—On the question of admitting waybill and office records without showing that they were correct, etc.: Baldridge v. Penland, 68 Texas, 441; Underwood v. Parritt, 2 Texas, 168; Bupp v. O'Conner, 21 S. W. Rep., 619; Ry. Co. v. Leggett, 86 S. W. Rep., 1066; id., 99 S. W. Rep., 176.

On the question of the court's failure to charge want of consent: Viser v. State, 10 Texas Crim. App., 86; Spradling v. State, 30 Texas Crim. App., 595.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, JUDGE.—The appellant was indicted by the grand jury of Harris County for the theft of six pairs of overalls worth $10.50; was convicted and his penalty fixed at thirty days in jail and a fine of $200.

The record shows that the appellant did not or could not give a recognizance, and is still confined in the county jail of Harris County. The following is all of the testimony that was introduced in the case:

G. L. Thompson testified: "I am employed by the Wells Fargo Co.'s Express, and was in their employ on the 28th day of June, 1910, the day of the alleged theft. I had general charge and management and control of the company's station situated at the Grand Central Depot; I was not in actual charge of the depot station on the day of the alleged theft. Robert Forest was at that time at the station and had charge and control. I had not personally received any of the packages delivered there by the driver on the day of the alleged theft. I do not of my own knowledge know of anything that occurred there on that day. All I know about the matter is what the records of the office at the depot station show." Over defendant's objections, the witness was then permitted to further testify: That the records showed that there had been a package received at the depot station on the 28th day of June, 1910, from one of the drivers of the Wells Fargo & Co.'s Express by the Chapman Mfg. Co., of Houston, Texas, directed to Ladd & Co., at Ladd, Texas, and that said package had never reached the consignee, Ladd & Co. That he did not know what the package contained, whether overalls or something else. That the package for the company was delivered to the employee at their depot office, and then loaded into trucks and put into the express cars. That the defendant was in the employ of the company and it was his business to load the packages on the truck and carry them up to the car and deliver them to the agent of the company in the car. He testified that he did not make up the records in the office. Then over defendant's objection was introduced in evidence a waybill showing that a package had been received at the depot from the Chap-

man Mfg. Co., of Houston, Texas, directed to Ladd & Co., at Ladd, Texas.

R. M. Chapman testified that he was secretary and treasurer of the Chapman Mfg. Co. now, and on the 28th day of June, 1910. That on that date a package containing six pairs of overalls of their manufacture and make, and of different sizes was delivered to the driver of the Wells Fargo & Co.'s Express, directed to Ladd & Co., Ladd, Texas. That his company manufactures, and were manufacturing at that time thousands of pairs of overalls; that they had about 800 customers in the city of Houston; that they were delivering goods and overalls of the same kind as those contained in the package. That he afterwards saw six pairs of overalls at the police station of their make, and with their kind of buttons on them; that they were of the same kind and had the same kind of buttons of all those being manufactured by his company at that time. That there were no marks on these overalls by which he could specially identify them, but could only identify them as overalls that had been made by the Chapman Mfg. Co. That they were wrapped in brown shipping paper.

William Payton testified that he was a city detective on the 29th day of July, 1910, and on that day he saw the defendant come out of a general store on Travis Street in Houston, Texas, and that he had under his arm wrapped up in some kind of paper what he afterwards found to be five pairs of overalls; that he arrested the defendant and took him and the overalls to the station. That these five pair of overalls were afterwards seen by Mr. Chapman, the manager of the Chapman Mfg. Co., at the station. That Mr. Chapman recognized the overalls as having been made at his factory. That he also took one pair of overalls from a negro called Isham and brought them to the station and put them with the five pair. That all six pair were there when Mr. Chapman examined them.

Isham, a negro, testified that on or about June 29, 1910, he saw defendant in the yards of the H. & T. C. R. R. Co., and that the defendant had some overalls in his possession wrapped up in a piece of paper and gave him a pair of them; that he afterwards delivered them to the police officer. This closed the evidence.

At the time the waybill was offered in evidence the defendant objected to the introduction thereof, because "the evidence contained in the waybill was incompetent, irrelevant, immaterial and hearsay, and that it had not been shown that the waybill was correctly made either by the person who made it out and received the package, or by any other person." The court overruled these objections and admitted the waybill in evidence.

The appellant objected to that part of the testimony of the witness Thompson wherein he stated what the records of his office show as to the package of overalls alleged to have been stolen, because the evidence was not the best evidence and was hearsay and because the rec-

ords themselves were not admissible and said evidence was incompetent. The objections were overruled and the testimony admitted.

It is our opinion that the court erred in admitting this testimony over the objections of appellant. There was no proof whatever offered of who made the records, nor that they were correctly made, nor by whom made. Neither was it shown who made the waybill or from what data, nor that it was a correct record of what it purported to be. It was at least incumbent upon the State to prove who made these records, from what data obtained, and that they were correctly made, before either the record or waybill could be introduced as against the defendant, over his objections.

The appellant also requested the court to charge the jury to find the defendant not guilty. The appellant also objected to the charge of the court at the time, because the charge failed to instruct the jury that the taking by the defendant must have been done without the consent of the prosecuting witness, G. L. Thompson. Thompson is the party whom the indictment alleges was the owner of the property stolen. In this connection it will be seen from the statement of the evidence that this witness, Thompson, did not state that the property was taken by the defendant or any one else without his consent. It was necessary not only to charge that the defendant took the property without Thompson's consent, but it was necessary that this should be shown by the evidence, too. The charge of the court requested by the defendant to require that the jury find him not guilty calls in question, we believe, whether or not all the testimony offered in evidence was sufficient to onvict. The case, from this record, seems not to have been develed. It is not necessary for us now to pass upon whether this evidence was insufficient to convict, but we have serious doubts of its sufficiency.

There are several other errors assigned. We think it unnecessary to pass upon them in view of another trial. For the errors above pointed out the judgment of the court is reversed and the cause remanded for a new trial.

*Reversed and remanded.*