TOM STEPHENS V. THE STATE.

No. 1253. Decided June 14, 1911.

Rehearing denied October 18, 1911.

**1.—Selling Intoxicating Liquors—Local Option—Occupation—Continuance— Want of Diligence—Impeaching Testimony.**

Where defendant's application for continuance did not show proper diligence, and besides the absent testimony was merely for the purpose of impeaching the testimony of a State's witness, there was no error in overruling same.

**2.—Same—Evidence—Delivery of Express Packages.**

Where, upon trial of selling intoxicating liquors in local option territory, as an occupation, appellant's bill of exceptions to the admission of certain testimony regarding the delivery of certain express packages to the defendant was so qualified by the judge as to indicate that the objectionable testimony was excluded, and that the defendant had in fact received these packages marked "intoxicating liquors" from the agent of the express company, there was no error; and this, although said agent did not personally know what said packages contained.

**3.—Same—Evidence—Books—Papers—Records—Express Company—Public Records.**

Upon trial for the sale of intoxicating liquors as a business in local option territory, there was no error in admitting evidence of the entries from the books, records and papers of the express company showing that the agent of the express company had delivered certain packages marked "intoxicating liquors" to the defendant during the time in which he was charged with such sales, as under the Act of the Legislature of April 18, 1905, p. 379, such books and papers are quasi public records; besides, the evidence showed that the defendant received each of these packages and signed for same on the books or sheets of the express company.

**4.—Same—Indictment—Precedent.**

Where, upon trial of selling intoxicating liquors in local option territory, as a business, the defendant moved to quash the indictment, but the same complied with precedent in such cases, the same was correctly overruled. Following Slack v. State, 61 Texas Crim. Rep., 372.

**5.—Same—Evidence—Other Transactions.**

Where, upon trial of selling intoxicating liquors in local option territory as a business, the indictment alleged such sales to certain parties named, and further alleged that other sales were made by defendant to parties unknown to the grand jury, there was no error to admit testimony of sales to parties not named in the indictment.

**6.—Same—Charge of Court—Other Sales.**

Upon trial of the sale of intoxicating liquors in local option territory and pursuing occupation thereof, there was no error in the court's failure to charge on the question of other sales than those specifically alleged in the indictment; besides, the matter was not presented in appellant's brief.

**7.—Same—Evidence—Bill of Exceptions.**

Where, upon appeal from a conviction of pursuing the occupation of the sale of intoxicating liquors in local option territory, there was no evidence that the defendant sold beer, but the evidence showed that he sold whisky, and that he had received packages from the express company marked "intoxicating liquors," and defendant's bill of exception was so qualified that such testimony was admitted because by the weight of the package it tended to show that it was whisky, there was no error.

Appeal from the District Court of Fannin. Tried below before the Hon. Ben H. Denton.

Appeal from a conviction of pursuing the occupation and business of selling intoxicating liquors in local option territory; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Cunningham & McMahon,* for appellant.—Upon the question of admitting in evidence the entries from the books and records of the express company, and such books, when witness did not know of his personal knowledge whether they had been correctly kept: Patterson & Company v. G., C. & S. F. Ry. Co., 126 S. W. Rep., 336; Railway v. Johnson, 7 S. W. Rep., 838; Edwards et al. v. Adams, 122 S. W. Rep., 898; Cathey v. Railway, 124 S. W. Rep., 217; Railway v. Leggett, 86 S. W. Rep., 1066; Delaney v. Framingham, 88 N. E. Rep., 773; King v. W. U. T. Co., 65 S. E. Rep., 944; North Birmingham Lumber Co. v. Sims, 48 S. Rep., 84; McConico v. State, 61 Texas Crim. Rep., 48; Flemming v. State, Texas Crim. Rep., decided June 23, 1911.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, JUDGE.—Appellant was indicted for engaging in and pursuing the occupation and business of selling intoxicating liquors in Fannin County, in the fall of 1910, after prohibition was in force at an election held in 1903. He was tried and convicted, and his penalty fixed at two years confinement in the penitentiary.

The evidence by the State shows that W. E. Campbell testified that in the fall of 1910, he bought a pint of whisky from the appellant at two different times, and paid him one dollar for each pint. "The first time was in Tanktown, right this side of that thicket down there in the road." Appellant had the whisky in his hand and the witness saw it. A month or two later, he bought the second pint. That this second purchase was at appellant's house. This was in November, 1910. This witness did not see anybody at appellant's house except negroes. He went there hunting for whisky.

Wesley Pea testified that during the fall of 1910 he bought whisky from the appellant twice, one quart the first time, for which he paid two dollars; a half gallon the second time, for which he paid four

dollars. The first purchase was at appellant's house in what they call Tanktown, and the same place the second time. He did not know whether the purchase at either time was on October 21st or not. He bought the whisky for Joe Peevy the first time; the second time he bought it for himself and his cousin. When he got the first whisky, he went in appellant's house and called for it, and appellant went in a room, opened a trunk, got it out, and gave it to him. The next time he went, appellant said he did not have any but if the witness would wait a little bit he would get it, and he waited; the appellant went off north and got it. He did not know where he went; that he was only gone a few minutes.

Frank Belcher testified he bought whisky from appellant in the fall of 1910, four, five or maybe six times. He bought a half pint the first time and paid appellant a dollar for it. This was in September, 1910. He got two pints the second time and paid a dollar a pint. The third time he got a quart and paid either a dollar and fifty cents or two dollars. Appellant said it was barrel goods and came a little cheaper. The next time he got two quarts and paid $2.25 a quart for it. He made two trips to get the last two quarts. When he first went to appellant's house appellant said he would get it for him and meet the witness down at a little old boi's d'ark thicket, and witness went there and appellant did meet him there. The first time he got whisky from appellant, appellant was at his house, and got it out of a dresser drawer. The next two times it was at appellant's house also. The last time was in daytime and once or twice about sun down or a little after, and the other times after night. Appellant said that business was good last fall at election time, would be pretty good, but he did not want witness to come down there with a crowd; if witness would drive down there with anybody in a buggy, appellant would not let him have it; he said he did not care about anybody coming with witness on foot, but he did not want so many buggies coming down there, that people would get suspicious about it. The first time witness got whisky from appellant, he got it out of the north room, twice out of the south room, and the last time he did not know what part of the house he got it from.

Lige Lawrence testified he bought a pint of whisky from appellant one time and paid him a dollar for it in September, 1910.

Forrest Hardin testified he was working for the American Express Company during the fall months of September, October and November, 1910; he drove the delivery wagon for the express company, and made delivery of express packages for the company during said time. There was a certain territory at the town of Bonham and Tanktown which was outside of the free delivery of express packages by the express company. The appellant employed the witness to deliver packages from the express company to him at his place, outside of this free delivery territory, and paid him 25 cents per package therefor. Dur-

ing said time, September, October and November, 1910, the witness delivered many boxes and packages to the appellant at his place, for which the appellant paid him 25 cents per package. All of the packages which he delivered appellant were about two feet long and a foot or a foot and a half high. The appellant would come to the express office, sign up for the stuff, and then hire the witness to haul it to his house. Appellant could not sign his name, but would sign it by a mark or have some one sign it for him. The agent of the express company at this place, kept a record of intoxicating liquors shipped through the office there and their weight. Such deliveries of these packages were made to the appellant sometimes once a week, sometimes twice a week, and sometimes oftener during this whole period. The express company's books at this place were then exhibited to the witness, and liquor sheets also made out by the agent of the company at this place were also shown to him and he identified the books and sheets as the ones kept by the express company at this place. The special liquor sheets had to be signed by the appellant before the packages were delivered to him. All of these packages delivered by this witness to appellant were marked "intoxicating liquors" on the boxes or packages. The witness did not open the boxes or packages and did not, of his own knowledge, know what was contained therein. All he knew of what was contained therein was what was marked on the package, and the record kept thereabouts. All of these boxes and packages came from other places and were addressed to the appellant, Tom Stephens. Appellant could neither read nor write, and witness did not read to him what was on the outside of said packages.

It seems that these records and books and office of the express company were at the city of Bonham, and that Tanktown was some suburb of Bonham outside of the free delivery territory of the express company at Bonham.

Roy White testified he was then agent for the express company in Bonham, and had control and custody of the records and books of the company. The books of the company for this place were then exhibited to and identified by the witness as the books of the company during said period. These records and books show where goods were shipped from and who they were delivered to. In some instances it shows the character of the goods delivered. The witness was familiar with the way the books were kept and they were correctly kept to the best of his knowledge. They were the books of the company kept at that place, and were turned over to him at the time he took charge of the office as the records and books belonging to and kept by the company at that place. The witness did not see the entries made in the books. In connection with this witness' testimony, these books of the American

Express Company were introduced in evidence by the State and showed during September, October and November, 1910, the following:

"Out of Ft. Worth, a keg of beer, signed by Tom Stephens; weight, 100 lbs.; 90 cents. 3 boxes consigned to Tom Stephens; weight, 160 lbs.; collect $1.05. I can't tell who they were delivered to, it was signed at the train by Mr. Smith, I presume it was signed by him, signed by way-bill. September 5, Tom Stephens, out of Ft. Worth, box weighs 56 lbs.; collect 75 cents. Here are two other boxes, one weighs 56 and the other 50 lbs.; collect 25 cents and 65 cents. They are signed way-bill again. September 7th, out of Ft. Worth, cask beer; 250 lbs.; collect $1.50; delivered at train. Signed, Tom Stephens. September 12, box liquor for Tom Stephens; weight, 50 lbs.; collect 65 cents. Delivered at train, a keg of beer, delivered at train.

"September 19, out of Ft. Worth, 2 boxes, Tom Stephens & Co.; weight 120 lbs. Tom Stephens signed by his mark, W. S. That shipment was delivered to Tom Stephens himself. September 19, ½ barrel, 180 lbs.; collect $1.10. Tom Stephens (signed by his mark). September 26, out of Ft. Worth, cask; weight, 250 lbs.; collect $1.50; and he signed 'on hand' sheet. September 27, out of Ft. Worth, a box for T. Stephens; weight, 50 lbs.; collect 65 cents; signed way-bill. A cask for Tom Stephens; weight 250 lbs.; collect $1.50; signed way-bill. September 28, out of Ft. Worth, Tom Stephens, 55 lbs.; collect 70 cents. Signed O. H. 'on hand' sheet, by Tom Stephens. September 30, out of Ft. Worth, box, Tom Stephens; weight 50 lbs.; collect 65 cents. Signed 'on hand' sheet, by Tom Stephens. Out of Ft. Worth, cask, Tom Stephens; weight, 250 lbs.; collect $1.50. Signed 'O. H.' This is signed by Tom Stephens, but it don't give his mark. On October 3d, out of Ft. Worth, 2 boxes, Tom Stephens; weight 100 lbs.; collect 90 cents. Signed 'O. H.', Tom Stephens, his mark. October 6th, out of Ft. Worth, a box for Tom Stephens; weight 55 lbs.; collect 30 cents. Signed 'on hand.' October 7th, Tom Stephens, two boxes, 110 lbs.; collect $1.00. 'O. H.' sheet, Tom Stephens, his mark. October 10, two boxes liquor, Tom Stephens; 100 lbs.; 90 cents collect. Signed by his mark. October 14, out of Kansas City, two boxes of liquor, Tom Stephens & Co.; weight, 98 lbs. Signed Tom Stephens, by his mark. October 15, two boxes of liquor out of Ft. Worth; weight 100 lbs. Signed Tom Stephens, by his mark. A cask of beer to Tom Stephens; 100 lbs.; collect 60 cents. Signed Tom Stephens, by his mark. October 21, out of Kansas City, barrel liquor, Thomas Stephens; weight, 179 lbs. Signed Thomas Stephens, by his mark. October 31, out of Ft. Worth, box of liquor, Tom Stephens; weight, 50 lbs. Signed Tom Stephens, by his mark. November 2, box of liquor out of Ft. Worth, for Tom Stephens; weight 50 lbs.; collect 65 cents. Tom Stephens, by his mark. Another one, weight 50 lbs. Tom Stephens, his mark. November 3, a box of liquor out of Ft. Worth, Thomas Stephens; 100 lbs.; collect 60 cents. Signed

by his mark. November 7, out of Ft. Worth, a box of liquor; weight, 50 lbs.; collect 65 cents. Signed Thomas Stephens, his mark. November 10, box of beer out of Ft. Worth, Thomas Stephens; 100 lbs.; collect 60 cents. Thomas Stephens, his mark. A box of liquor, Thomas Stephens; weight, 50 lbs. Signed Thomas Stephens, his mark. November 22, out of Ft. Worth, box of beer for Thomas Stephens; 25 lbs.; 2 dozen bottles of beer from Rosenberg & Mason, Ft. Worth, Thomas Stephens. Box of beer; weight 100 lbs.; collect 60 cents. Signed Thomas Stephens, his mark."

On cross-examination, this witness further testified that he became agent for the express company November 29, 1910; that prior to that he was messenger for the company and was not in the office at Bonham. From November 29th to the present he had been local agent at Bonham for the American Express Company. That the above entries read by witness up to November 22, 1910, were not made at the time he was in the office and he did not see any of these entries made. Of his own knowledge he did not know what was in the boxes or packages.

E. L. Bryant testified that in the early fall of 1910, he delivered to appellant a cask of beer. Appellant signed for it at the time of the delivery. He signed for it at the American Express Company's office. The average weight of a case of whisky is about fifty pounds, and the average weight of a cask of whisky is about 250 pounds. There are ten dozen bottles in a cask, and the witness thinks they put a dozen pint bottles in a case. The barrel of beer he delivered to appellant at his house. He did not see what was inside of the barrel, but went by the marks on it.

O. B. Fincher testified that he knew the appellant; that he has known him since last August; that he lived in Bonham and that he never caught the appellant at work any time during last fall. Witness knew where the American Express Company's office was located in Bonham, and he sometimes or frequently saw the appellant at that office.

Henry Browning testified he was a night watchman and lived in Bonham; knew the appellant; that he did not know of appellant doing any manual labor of any kind during last fall; had seen him on the walk around the American Express Company and in it a few times.

Charley Erwin testified he was city marshal of Bonham; knew the appellant; that he did not know of appellant doing any manual labor or work of any kind during the fall of 1910; that he had seen him standing around the corner at the American Express Company's office.

W. B. Leeman testified that he did not know of appellant doing any manual labor of any kind since he worked at the roundhouse sometime last summer or latter part of the spring.

Bob Russell testified he was a peace officer in Bonham for two years, and knew appellant; that he had not known him to do any manual

labor in the last four or five months; that he had seen him around the American Express Company's office.

The defendant introduced six witnesses who testified that the general reputation of Frank Belcher was not good. Some of these testified that his reputation for honesty was not very good. He also introduced two witnesses who testified that the general reputation of W. E. Campbell for truth and veracity was bad. Another witness for the appellant testified that about August or September, 1910, the appellant was in business with appellant's brother, Lem Stephens, and that he then sold him a bill of groceries. He made this particular trade with appellant. At first he billed the goods to Stephens Bros., Lem and Tom, but later changed it to Lem only. This change seems to have been about Christmas. This, in substance, is all the testimony.

1. Appellant has filed a brief in which he presents several matters which are raised by bills of exception and in his motion for new trial. The first question he presents is that the court erred in overruling his motion for continuance on account of absent witnesses. The motion for continuance and the bill of exceptions to the overruling of the motion do not show when appellant was arrested. The indictment was returned and filed in the lower court, February 16, 1911. Presumably, the appellant was at once arrested. The motion for continuance shows that not until March 1, 1911, did the appellant apply for any process for any of these witnesses. It then shows that on that date he had process issued to Bowie County for Joe and Will Jones, and to Fannin and McLennan Counties for Joe and Randall Peevey, to be returned on March 6, 1911. No reason is shown why process was not earlier sued out. The subpoenas to Bowie and Fannin were both returned not served on Joe and Will Jones and Joe and Randall Peevey. The process to Fannin County for the Peeveys shows that they were not in the county. The process to McLennan County was returned not served for the want of time. Why the process was made returnable on March 6th, is not shown. Still later, process was again issued to McLennan County for the Peeveys, returnable on March 13th. This process was returned at once showing that the Peeveys had removed from McLennan County to the Indian Territory about twenty years before that date and were not found in McLennan County. The second subpoena for the witnesses, Jones, was issued March 6th, returnable on 13th, and does not appear to have ever been placed in the hands of the sheriff of Bowie or any other county, and no return is made thereon. So that as to Joe and Will Jones, unquestionably, the diligence was not sufficient. On March 13, 1911, the day on which the case seems to have been tried, appellant, in his motion for continuance, says that on that morning, for the first time, he learned from a neighbor that Joe Peevey was in Corsicana temporarily on a visit, and that Randall Peevey was at Soper, Oklahoma, and that as he was in jail, he was unable to locate these witnesses until the time

indicated and had to rely on his attorneys therefor. It is our opinion that the diligence to secure these witnesses is not shown to be sufficient to entitle him to a new trial under the circumstances. Besides this, the only testimony that he alleges he expected to make by the Peeveys was that Wesley Pea, one of the State's witness, would swear that the first time he bought whisky from appellant, he did so for the Peeveys, and that on his return to them, when they asked where he got the whisky, he said to them he did not know the negro he got the whisky from, and that he will now swear that he got the whisky on that occasion from appellant, and that he knew appellant at that time and prior to the sale. It will be further seen that the testimony of the Peeveys, therefore, was merely for the purpose of impeaching the witness Pea. A continuance will not be granted to procure such testimony. The appellant, in his brief, does not present this question on the witnesses, Jones, but presents it only on the witnesses Peeveys. So that the court did not err in overruling appellant's motion for a continuance, nor in overruling his motion for a new trial on that ground.

2. The next question presented by appellant's brief is in regard to the testimony of the witness, Hardin, the substance of which is given above. This bill seems to be a kind of running bill of exceptions; it contains about four pages of typewritten matter, the substance of which, however, was that the appellant objected to the testimony of this witness that he hauled boxes or packages from the express company in Bonham to the place of appellant at Tanktown, and that it was out of the free delivery limits of the express company, that the appellant paid him therefor, and hired him expressly to deliver these several packages; and to his stating that the packages that he hauled for appellant at appellant's instances, were marked on the package "intoxicating liquors." The grounds of objection were that the testimony of the witness was opinion testimony; that he did not have personal knowledge of what was in the packages; that the packages were marked by others, and the marking in no way bound the appellant. The court, in allowing the bill, qualified it by stating that the witness testified the packages or boxes were labelled "intoxicating liquors" on each one. The court further qualifies the bill by stating that page 14 of the statement of facts recording the testimony of said witness, was excluded from the jury at the appellant's instance. Apparently what is indicated to be excluded was what the witness said about the appellant living outside of the free delivery limits of the express company. If this is not what the court indicates, we do not understand that feature of his explanation.

By the Act of April 18, 1905, every person who shipped intoxicating liquors from any point without to any point within prohibition territory was required to place in a conspicuous place on such package or parcel, names of the consignor and consignee, and the words,

"intoxicating liquors" in plain letters. And made it an offense not to do so. This Act also required the express companies to enter upon their books upon the arrival of such packages within prohibition territories, the names of the consignor and consignee, and other data of such package, and made it an offense for any express company to fail or refuse to do this. The appellant was shown to have received and receipted for each of these packages so marked. This witness did not attempt to testify that any of these packages contained intoxicating liquors of his own knowledge. In fact, the effect of his testimony is that he personally did not know what was in these packages or boxes because he did not open them. The court did not err in admitting such testimony. Coleman v. State, 54 Texas Crim. Rep., 235.

3. The next question raised by appellant's brief and shown by his 5th bill of exceptions, complains of the action of the court in permitting the witness, Roy White, to produce, and the State to introduce, the books of the express company with the entries made therein, the substance of which is given above in his testimony. This bill shows that the books and papers of the express company, of which he was agent at Bonham, Texas, were the books of the company which were kept at that place and when he took charge there they were turned over to him by the preceding agent, as the books and records of the company kept in its business; that he was familiar with the way they were kept, and that they were correctly kept to the best of his knowledge; that he became such agent on November 29, 1910; that he was not in the office at the time these entries were made, and did not see any of them made, and of his own knowledge, he did not know what was in any of the said boxes. The testimony was objected to by appellant for the reason that the said books were not proved up as required by law, that they were immaterial, irrelevant, incompetent and hearsay; that it is not shown that the records are correctly kept nor who kept them, and it is not shown that the person making the record knew what the packages contained or their weight, or that any person knew their contents by their weight. The court allowed this bill with the explanation that this court, upon examining the testimony of said Hardin, would see that the appellant came to the express company's office two or three times every week during the fall and signed for the packages marked "intoxicating liquors," and paid that witness for hauling them to his house.

As stated above, the law required the express company to keep a record in its books of such matters as are shown by the books of this express company, and the testimony of this witness, Hardin, to which we are referred by the court's explanation, shows that the appellant himself, in person, receipted for these packages on these books and papers pertaining to these several shipments, and had this witness to haul these packages from the express company's office to his place at Tanktown, for which he paid him. It will be thereby seen that

although the appellant himself, as is shown by the testimony, could neither read nor write, that he was a party personally to the making of these records by his signatures thereon for these packages, and is so connected personally and had such knowledge of the entries in these books as to make them a part of his transaction. The proof also shows, as is shown by the bill of exceptions, that these records are sufficiently prima facie proven to be correctly made so as to make them admissible in this character of case against the appellant. It is not like proving up the books and papers of some one else with which the appellant had no connection whatever, as was held by this court in the case of McConico v. State, 61 Texas Crim. Rep., 48, 133 S. W. Rep., 1047, but in our opinion, they were clearly admissible in this case against the appellant.

4. The above are all of the questions presented by appellant's brief, and we take it they are all the material ones. However, the appellant made a motion to quash the indictment on various grounds, which was overruled by the lower court. The indictment in this case was clear and full, showing that prohibition had been adopted in Fannin County properly and legally in 1905, and that on or about October 25, 1910, the appellant, in Fannin County, Texas, did then and there unlawfully and not as permitted by law, engage in and pursue the occupation and business of selling intoxicating liquors in violation of said law which was then and there in full force and effect, and that he did then and there on or about August 30, 1910, make two sales of intoxicating liquors to W. E. Campbell, and on or about November 25, 1910, he did make two sales of intoxicating liquors to Wesley Pea, and on or about September 1, 1910, he did make four sales of such liquors to one Frank Belcher, and did on or about October 24, 1910, make one sale of such liquor to Bob Barrett, and on or about said dates, he did make other and different sales of such liquors to persons to the grand jury unknown, and did, in said county and State, during the months of August, September, October, November and December, 1910, make more at least than two sales of intoxicating liquors in violation of said law. All the questions raised by said motion have already been decided against appellant by this court in the case of Slack v. State, 61 Texas Crim. Rep., 372, 136 S. W. Rep., 1073, and other cases.

5. Another bill of exceptions by appellant complains of the testimony of the witness, Lige Lawrence, wherein he testified that sometime during the fall of 1910, he bought whisky one time from the appellant, because the indictment does not charge this particular sale, and that such testimony was irrelevant, immaterial and prejudicial to appellant. The court allowed this bill with the explanation that the indictment alleges that other sales were made by appellant to parties unknown to the grand jury. In this character of offense the gist of it is that the party accused, engaged in or pursued the occupation or business of selling intoxicating liquors in violation of law, and while this court

has held that the persons to whom at least two sales have been made and their dates shall be alleged, proof of sales about the same time by the appellant of two others are clearly admissible, even though the names and time at which the sales are made are not specifically alleged.

6. Besides this, in other grounds of the appellant's motion for a new trial, he complains of the charge of the court because the court did not charge that it was necessary to prove other sales than those specifically alleged in the indictment under that part of the indictment which charges that other sales were made to parties unknown to the grand jury. It appears from this that the appellant took both sides of the issue in the court below, but does not present these matters by his brief now.

7. Another bill of exception complains of the action of the court in permitting the witness, Bryant, to testify that one of the packages that he delivered to the appellant, among other deliveries shown by his testimony, was marked beer, because the indictment does not charge the appellant with selling beer, and there was no proof that he ever sold beer, and that this testimony is immaterial and irrelevant. The court allowed this bill with the explanation that the witness' testimony showed that he saw the defendant sign by his mark at the express company's office for this cask of beer, and that the ordinary weight of a case of whisky was fifty pounds, and the ordinary weight of a cask of whisky was 250 pounds. It seems that the idea of the court was that while this cask was marked beer, that the testimony tended to show that it was whisky. Whether this is the case or not, it is our opinion that there was no error in admitting the testimony which would authorize this court to reverse the case.

We deem it unnecessary to discuss any of the other questions raised by the appellant. They have all been considered and none of them would authorize us to reverse this judgment.

The judgment is, therefore, in all things, affirmed.

*Affirmed.*

ON REHEARING.

October 18, 1911.

PRENDERGAST, Judge.—The appellant has filed a motion for rehearing and has recently also filed a supplemental motion. He presents but one question, and that is, he claims that this court erred in not holding that the lower court erred in admitting the entries from the books and records of the "Pacific Express Company" in evidence. He means "American Express" instead of "Pacific." He vigorously contends that this evidence was hearsay and cites in both the original and supplemental motion for rehearing, authorities which he claims sustain his contention.

We will briefly restate in substance what the record shows about this matter.

Unquestionably, the evidence shows that the books and records admitted in evidence were the records and books of the American Express Company, which were kept by it at Bonham, Texas, for the period of time for the months of September, October, and November, 1910. There can be no question as to identity of these books and papers.

The proof further showed that each of these packages which were received at this office of the express company was addressed to the appellant as the consignee thereof; that he actually received, and had them hauled from the express company's office by express company agents and others to his place of business; that each of these packages were marked "intoxicating liquor," and he is shown to have signed a receipt for each of them upon the paper or book, as the case may be, where the entry of the several items was made.

The Act of the Legislature of April 18, 1905, p. 379, expressly requires that each person who shall place, or have placed, any package of whatever nature, containing any intoxicating liquor, with any express company for shipment to any point in any prohibition territory where the sale of intoxicating liquors has been prohibited, shall place in a conspicuous place on such package, the name of the consignor and consignee, and the words "intoxicating liquors" in plain letters. And provides that any one who shall violate this section shall be guilty of a misdemeanor and subject to the punishment prescribed.

Also that when any express company shall receive any package of whatsoever nature, whether from a point within or without the State, containing any intoxicating liquors for transportation to any point within any prohibition territory, such express company shall forthwith transport such liquor to its place of destination and upon its arrival there shall be entered in a book to be kept for that purpose, the names of the consignor and the consignee, and the exact date of the arrival of such package, and provides that if any express company shall violate said law, it shall be liable to a penalty of one hundred dollars for each infraction thereof.

In the emergency clause of this Act, it is recited as a reason why it should go into immediate effect, that the will of the people is thwarted and the local option laws of the State are, to a great extent, made ineffective because the offices of the express companies are constantly filled with intoxicating liquors which are kept indefinitely, awaiting the convenience of the consignee.

This Act makes the entries on said packages and in the books and papers of the express companies, at least quasi public records, and we believe that because thereof, they would be admissible in evidence in a case of this character by proof that they were the records of such matters kept by the company at the office of the company and were identified as such records and papers so kept. Dawson v. State, 32 Texas Crim. Rep., 535; James v. State, 63 Texas Crim. Rep., 75, 38 S. W. Rep., 612. In this case, however, the unquestioned proof clearly

shows that the appellant received each of these packages and that on the books or sheets so identified and introduced, he signed his name thereto as receipting therefor. So that it is the same in effect as if he had actually signed a separate receipt on a separate piece of paper and that had been identified and proven up as signed by him and introduced as a receipt therefor. It would make no difference in such a case who wrote the receipt and whether or not the party who wrote it knew anything at all about the contents of the packages he was receiving. Certainly having receipted for each of these packages as shown by these books and papers introduced, would not make them inadmissible, because the party who made the entries was not produced and did not testify that he made correct entries and knew the contents of the packages. It is true that appellant might not be concluded by his receipts that each of the packages contained intoxicating liquors. He perhaps would be permitted to show, if he could, that none of the packages contained intoxicating liquors. We are not discussing and have not discussed the effect of this evidence, but we are simply discussing its admissibility in evidence. What effect the jury should give thereto was left to them as it should properly be.

It is our opinion that the cases cited and relied upon by appellant have no application to the question raised in this case. Those cases refer to the books of some other with which the party objecting had nothing to do and was not a party thereto. In this case he was directly a party to each of these shipments, he was expressly stated in the face of each to be the consignee. He actually received them and had them hauled and delivered to his place of business and the books and papers introduced were, in effect, his receipt therefor. We think, unquestionably, the court did not err in admitting the testimony under the facts and circumstances of this case. 1 Greenleaf on Ev., (15 ed.), sec. 212.

The appellant's motion for rehearing will, therefore, be overruled.

*Overruled.*

Davidson, Presiding Judge, absent.