## CLIDE STEVENS v. THE STATE.

### No. 1993. Decided November 6, 1912.

**Local Option—Evidence—Agency—Book Entries—Express Company.**

Where, upon trial of a violation of the local option law, the defendant introduced evidence that he acted as the agent of the purchaser of the alleged intoxicating liquors, it was reversible error to permit the State, in order to counteract this testimony, to introduce the entries in a certain book kept as the record of the express company showing certain consignments of liquor to a person of the same name as defendant, without showing any connection between said entries in said book and the defendant, or that he had written his name in said book or that the entries were correctly kept at the time they were made. Distinguishing Stephens v. State, 63 Texas Crim. Rep., 382.

Appeal from the County Court of Fannin. Tried below before the Hon. Rosser Thomas.

Appeal from a conviction of a violation of the local option law; penalty, a fine of $25 and twenty days confinement in the county jail.

The opinion states the case.

*Cunningham & McMahon,* for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of violating the local option law, his punishment being assessed at a fine of $25 and twenty days imprisonment in the county jail.

The State's case is, in substance, that appellant sold Wilson, the alleged purchaser, a pint of whisky under the following circumstances: On or about March 5, 1911, on Sunday, Wilson got a pint of whisky from defendant and paid him one dollar for it. Appellant and Ofer Ridings came past the house of the witness Wilson on horseback, and upon reaching the point where Wilson and Lee Abbott were the defendant said, "I have that whisky now." Wilson and appellant walked off a short distance, and appellant gave him the bottle of whisky from his pocket, and Wilson then went back and borrowed a dollar from Abbott with which to pay for the whisky, and gave it to appellant. Upon cross-examination Wilson explained the matter in this way: "When he said 'that' whisky, I suppose he meant the whisky I had talked to him about a day or two or three days before here in Bonham; we were in Bonham and I asked defendant if he could get me some whisky; he said he didn't know anybody here he could get it from, but that he was going to Sowell's Bluff on Red River that night and could get it from a fellow there; that if he could get it he would bring it to me; this was the next time I saw him after that." Ridings testified that he was in Bonham with Wilson the day when Wilson asked defendant if he could get him some whisky. He narrates the

conversation about as did Wilson. After going home that night Ridings and defendant went to Sowell's Bluff, and went to the home of a man named Cranson and inquired if they could get some whisky, and Cranson informed them he was out, but Charley Jones was camped on the road across the river, between the ferry and Gibson's saw mill, and that he could get it from him. Ridings and appellant crossed the river and went to Charley Jones' tent, and Ridings bought one pint of whisky and appellant bought two. They paid a dollar a bottle for the whisky; they were pint bottles. The following day about noon appellant and the witness Ridings started to the residence of Ridings' brother and went by Wilson's home. As they rode up to Wilson's appellant said, "I have that whisky now." They went off a few steps and appellant gave Wilson a pint of whisky. Wilson came back where Abbott and witness were and requested Abbott to let him have a dollar, which Abbott did. This dollar was given to defendant, and the parties separated. This is the substance of the State's case.

Under this theory the court charged the jury that if they should find from the evidence that defendant delivered the whisky in question to Wilson, but in doing so he acted as agent of Wilson and procured it as a friendly act towards Wilson and had no monetary interest in the delivery, or if they had a reasonable doubt as to same, they should acquit him. To meet this phase of the case the State introduced Graves, who testified he was express agent of the American Express Company at Ravenna, Texas; that he took charge of the office there in September, 1911. This sale occurred long prior to that time, to wit, about March 5, 1911. The witness further testified he never lived at Ravenna before, and when he went there he found the book that he then had before him as the record of the express office; that he receipted for it; that it is the book in which the express company kept a record of receipts and disposition of intoxicating liquors. He says: "I do not know who made the entries before I came there, as I was not there and did not see them made. I have made and correctly kept them since September, 1911. I did not see any of the entries made before September, and don't know who made them, and don't know of my own knowledge anything about their correctness. I never saw defendant write and do not know his handwriting. In fact, I do not know him. This book has a column showing date of arrival of shipments; one to show where shipped from; one to show contents of package; one to show the weight of packages; one to show date of delivery of package; one where the party signs his name when package is delivered to him, the party to whom it is consigned, and one for the signature of the party identifying the party signing for the package if the agent doesn't know him. I find the following entries:

"'Date of receipt of package—March 2.
    Place shipped from—Kansas City.
    Contents of package—two gal. liquor.
    Weight of package—26 pounds.

To whom consigned—Clide Stevens.

Date of delivery—March 4.

Signature of party receiving package—Clide Stevens.' "

A bill of exceptions was reserved to the testimony of Graves with reference to the book and its contents, etc. The bill is full and ample, setting out many grounds of objection, among others, that it is irrelevant, immaterial and hearsay; because the State has not in any manner connected the defendant with such entry, either by proving his signature or by showing that he received such package, or in any way connecting the defendant with such transaction; because the execution of the written document by defendant was not proven, and because the book was not shown to have been correctly kept, and it was not shown who kept it, and it was not shown that the person or persons who did make and keep such book at the times of the entries sought to be introduced was out of the jurisdiction of the court. We are of opinion that this testimony was improperly admitted. This error comes within the rule laid down by this court in an opinion written by Judge Prendergast in the case of McConico v. State, 61 Texas Crim. Rep., 48. See also Felder v. State, 23 Texas Crim. App., 477; Cathey v. Railway Co., 124 S. W., 217; Flynt Granite Co. v. Darling, 178 Fed., 163; Patterson v. Railway, 126 S. W. Rep., 336; Delaney v. Framington, 88 N. E., 773; King v. W. U. T. Co., 65 S. E., 944; M. K. & T. Ry. v. Davis, 104 Pac., 34; North Birmingham Lumber Co. v. Sims, 48 S., 84. This evidence was introduced to meet and overcome, as far as the State could, the question of agency. In the attitude in which the bill presents the matter, however, the testimony is not admissible. There is no evidence that appellant had written his name in the book and no attempt to connect him with the entries in the book. This does not infringe the rule laid down in Stephens v. State, 63 Texas Crim. Rep., 382, 139 S. W., 1141.

There are other grounds urged by appellant that are well taken. The authorities cited discuss those questions, and it is not necessary to review them.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*