### SMITH LACY v. THE STATE.

No. 1248.　Decided October 11, 1911.

Rehearing denied November 15, 1911.

**1.—Murder—Evidence—Cross-Examination.**

Where, upon trial of murder, the defendant brought out the fact that a certain party was of bad character, there was no reversible error to permit the State to cross-examine on this question.

**2.—Same—Evidence—Conclusion of Witness.**

Upon trial of murder, there was no error in permitting a State's witness to testify that deceased had his hands in his front pocket all the time, at the time of the homicide; this was a statement of fact, and not a conclusion.

**3.—Same—Evidence—Husband and Wife—Cross-Examination.**

Upon trial of murder, where defendant examined his wife as a witness as to a certain letter she had received, and the acts and conversation between them, there was no reversible error in permitting the State to ask the witness if at the time of this conversation the defendant did not threaten to cut her throat, to which she answered in the negative.

**4.—Same—Evidence—Cross-Examination.**

Where the wife of the defendant volunteered the information that she had another letter from the same source, there was no reversible error in permitting the State to cross-examine her upon this subject.

**5.—Same—Evidence—Threats—Bill of Exceptions—Motive.**

Where the bill of exceptions did not state the grounds of appellant's objection with reference to the testimony to certain threats by the defendant against a third party, the same could not be considered; besides, the question was legitimate in showing motive.

**6.—Same—Evidence—General Reputation.**

Where the State at no time, or in any way, laid a predicate for impeaching the defendant's reputation as a witness, there was no error in excluding testimony of the general good reputation of defendant.

**7.—Same—Charge of Court—Manslaughter.**

Where, upon trial of murder, there was no evidence raising the issue of manslaughter, there was no error in the court's failure to charge thereon.

Appeal from the District Court of Kaufman. Tried below before the Hon. F. L. Hawkins.

Appeal from a conviction of murder in the second degree; penalty, six years imprisonment in the penitentiary.

It appears from the testimony that, while the defendant and his wife were separated, he maintained illicit relations with one . Tebe Galloway, and that after a reconciliation with his wife, and their living together, a certain letter written by the said Galloway to defendant fell into the hands of defendant's wife, causing some domestic trouble between defendant and his wife; that defendant, after making some inquiry as to who was responsible for the letter, left his farm and went to the town of Mabank, taking his shotgun with him, and was seen in Mabank inquiring for the deceased, and that he was standing behind the livery stable at the shop when deceased and another were coming towards town walking along side by side; that the deceased had his hands in his pocket, and he and his companion appeared to be just walking along talking; that defendant called deceased up to him, the latter still having his hands in his pocket, when defendant picked up his shotgun which was lying nearby, and shot the deceased, killing him; that the deceased was not doing anything just before defendant shot him, but was just walking towards defendant after the latter had called him; that there was but little conversation between the two. The deceased was unarmed at the time.

The defendant testified that he called the deceased to him to have an explanation from him about the letter, and wanted him to go to his wife, who was angry about it, and pacify her; that when deceased

came up toward the defendant he said: "I see you have got your gun; what are you going to do with it?" starting across the road toward defendant, and that defendant, believing that deceased had a pistol and was going to hurt him, reached for his shotgun and killed deceased.

*Terry & Brown, A. U. Puckett* and *H. M. Cosnahan,* attorneys for appellant.—On 'the question of admitting testimony of bad character of third party: Buck v. State, 83 S. W. Rep., 387; Murmutt v. State, 67 S. W. Rep., 508.

Upon question of cross-examination of defendant's wife: Buchanan v. State, 52 S. W. Rep., 769; Gaines v. State, 42 S. W. Rep., 384.

On question of threats: Hall v. State, 64 S. W. Rep., 248; McMahon v. State, 81 S. W. Rep., 296; Holly v. State, 46 S. W. Rep., 39; Gaines v. State, 42 S. W. Rep., 384; Earl v. State, 95 S. W. Rep., 1086; Garret v. State, 52 Texas Crim. Rep., 255, 106 S. W. Rep., 389.

On question of general reputation of defendant: Bass v. State, 65 S. W. Rep., 919.

On question of court's failure to charge on manslaughter: Watson v. State, 50 Texas Crim. Rep., 171, 95 S. W. Rep., 115.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was indicted by the grand jury of Kaufman County, charged with murder. Upon a trial he was convicted of murder in the second degree, and brings the case to this court on appeal.

1. Appellant's first ground is that the court erred in permitting the State to prove that Tebe Galloway had a bad reputation, because the character of the woman was not in issue in the case. It seems that the State elicited this testimony on redirect examination, after the appellant, on cross-examination, had brought out the fact that the woman was a "whore." If the appellant first brought to the attention of the jury that the woman was of that character, he can not now complain; and in the cross-examination of the witness by appellant we find this statement brought out by appellant: "My sister lived with me there where I took this whore in at the back window. I took that kind of a woman into my house at the pleasure of my friend (the defendant)." On redirect examination the State asked: "Who was this Tebe Galloway—what kind of character was she?" to which the witness responded: "She was of bad character." If the fact that she was of bad character was hurtful to defendant he had adduced the fact and called it to the attention of the jury, and having done so, it was not such error as defendant can complain for the court to permit the State to ask the question. Rogers v. State, 26 Texas Crim. App., 404.

2. In the second ground appellant complains that the court per-

mitted Russel Coleman to testify that deceased had "his hands in his front pocket all the time," contending that the evidence shows that the witness was not looking at the deceased all the time, hence this statement was but a conclusion of the witness. For a witness to testify that a person had his hands in his pocket would be a statement of fact, not a conclusion. It may be that the evidence, as a whole, would show that the witness testified falsely, but this would go only to its weight, not to its admissibility.

3. In his third ground, and in bill of exceptions number three, appellant alleges that the State was permitted to cross-examine his wife on matters not brought out on direct examination. Appellant himself had his wife to testify that defendant had demanded that she tell him who gave her a certain letter, and when she refused to do so defendant struck her, and compelled her to tell him. On cross-examination the State asked this witness if at the time of this conversation the defendant did not threaten to cut her throat, to which question she answered, "He did not." The appellant having developed the fact that defendant became angry about her refusing to tell from whom she received the letter, and the conversation leading up to the occasion when he struck her, the State would be permitted to ask the witness about any other part of the same conversation. However, if the testimony had not been admissible, the answer of the witness being "no," it could not have been of any injury to the appellant. Phillips v. State, 59 Texas Crim. Rep., 534. Again, the bill complains that the State, on cross-examination, was permitted to ask the witness if she had found other letters from Tebe Galloway to defendant. The court in its qualification refers to the statement of facts, which he says will show that witness volunteered the information that she had another letter from the same source. It appears that when she was asked about the letter she had testified to receiving, on the direct examination, that she responded she had given defendant two letters. Taking the testimony as a whole, and that defendant was relying on, in part, the fact that deceased had been the cause of his wife getting possession of the letter, which fact he himself proved, we do not think any error prejudicial to appellant appears of record in regard to this matter.

4. In bill number four appellant complains that, while defendant was on the stand testifying as a witness in his behalf, the State, on cross-examination, was permitted to ask him: "Didn't you first accuse John Bill Pierce of furnishing her the letters?" (meaning defendant's wife) to which the witness answered: "Well, Zim or some of us asked Billie who had been there, and she said Jim and John Bill Pierce. I said I'll bet you anything that he gave Alice that letter." He was then asked: "Didn't you say that if he (meaning John Bill Pierce) gave Alice that letter you would shoot him into doll rags?" which question was objected to by appellant and objection sustained by the court. Appellant in his bill does not state the grounds

of his objections, but merely states that when the witness Zim Loflin was on the stand the State had attempted to make said proof by that witness, and defendant's objection had been sustained; "that the court permitting such question to be asked was equivalent to permitting the question to get to the jury in the form of the question asked." A bill is not complete that does not state sufficient of the surrounding facts to make it complete and the specific grounds of objection urged. However, upon examination of the statement of facts, we find that this conversation took place the same morning that appellant is charged with killing deceased; that this conversation took place just prior to the time he compelled his wife to tell him in what manner she obtained the letter, and that deceased had furnished her the information. The State's theory was that appellant killed deceased because of this fact, without other provocation or justification. The appellant claimed to have acted in self-defense. Taking the evidence as a whole, we think the witness should have been permitted or required to answer the question, for it was spoken not as showing ill-will towards Pierce, but towards the man who enabled his wife to get hold of the letter in question. The actions of a defendant, his preparation, if any, and statements made by him about matters out of which the killing is claimed to have occurred, are always admissible, as we understand, when they tend to show the motive, state of mind, or reasons for the action taken. This is not conclusive, of course, for the defendant has the right to have his theory of the case presented, and the jury is to judge of the weight to be given the testimony and each circumstance in the case.

5. The appellant also reserved a bill of exceptions to the action of the court in refusing to permit the appellant to show by several witnesses that he had a good reputation for truth and veracity. The court, in approving the bill, states that the State at no time offered to impeach or in any way lay a predicate for impeachment of the defendant. As it was not sought to impeach the appellant as a witness, the court did not err in excluding the testimony.

6. The appellant complains that the court failed to submit manslaughter in his charge, and only submitted the case on murder of the first and second degree and self-defense. In the bill it is recited: "The defendant's wife, Alice Lacy, testified to telling the defendant that she could have as good a time with people that defendant believed to be his true friends as defendant could have with Tebe Galloway, the woman who wrote a letter and which fell into the hands of witness and led to the conversation between defendant and deceased, which ended with the killing in this case; also that deceased had told her that if defendant found out that he, deceased, had told witness about the letter, that defendant could do nothing but jump on him, and he was a man like defendant, and had told defendant that she was afraid of trouble between him and Jim Loftin if he, defendant,

went to Mabank, and was afraid Jim Loftin would hurt him, defendant; and defendant' testified that his wife told him that Jim, the deceased, had said that the defendant could do nothing but jump on him, as he was a man like defendant, and could whip defendant; he further testified that when he went to deceased to have the talk with him, he had in his mind the things which his wife had said to him about having a good time and about getting hurt, and that when he asked deceased to go home with him and console defendant's wife, that deceased said abruptly that he would not go with him anywhere, and when he asked him if he, deceased, had given his (defendant's) wife a letter, that deceased had answered that he had not been at defendant's house; that deceased then said, 'You have got your gun; what are you going to do with it?' and made a lunge forward and a demonstration as if to draw' a pistol or gun."

This testimony raises the issue of self-defense, but does not raise the issue of manslaughter. The evidence shows that appellant became angry about a letter out at the Gossett farm. That he left the farm and went to the town of Mabank. After getting there he walked around some time before he saw deceased. The State's evidence would make a case of murder. The appellant nor any other witness testifies to any state of facts that would cause that sudden anger necessary to reduce the offense to manslaughter. The remarks that defendant's wife testified deceased made to her were not communicated to defendant until after the killing, and, of course, they could have had no bearing on defendant's state of mind, and furnish no justification for his act.

The judgment is affirmed.

*Affirmed.*

Davidson, Presiding Judge, absent.

[Rehearing denied November 15, 1911.—Reporter.]