### FRANK WISNOSKI v. STATE.

No. 2225.   Decided January 15, 1913.

Rehearing Denied February 12, 1913.

**1.—Murder—Charge of Court—Manslaughter—Adequate Cause.**

Where, upon trial of murder, the evidence showed that the defendant and his companions became enraged at the deceased because he had punctured their bicycle tire, this was not adequate cause under the law, Article 1140, Penal Code, and where the evidence further showed that after deceased had been carried away, he was overtaken by defendant's companions and knocked down by one of them and thereupon defendant stabbed him to death with a knife, the court correctly submitted murder in the first and second degrees, and there was no error in his failure to charge on manslaughter.

**2.—Same—Charge of Court—Accomplice—Corroboration.**

Where one of defendant's companions who was present at the homicide testified that defendant cut deceased with a knife, but that the witness did not know it at the time, there was no error in the court's charge submitting the issue of accomplice to the jury; besides, if said witness was an accomplice, he was sufficiently corroborated by other testimony.

**3.—Same—Evidence—General Reputation.**

Where the State did not seek to impeach the defendant's reputation for truth and veracity, there was no error in refusing to permit him to prove his good reputation for truth and veracity. Following Hill v. State, 52 Tex. Crim. Rep. 241, and other cases.

**4.—Same—Evidence—Declarations of Third Parties.**

Where, upon trial of murder, the words passing between defendant and a third party just before the time of the homicide were so intermingled with

the beginning of the trouble with deceased that they were part of the transaction, there was no error in admitting them in evidence.

### 5.—Same—Verdict—Certainty—Degree.

Where, upon trial of murder, the jury found defendant guilty as charged in the indictment of murder of the first degree, the same was sufficiently certain and specific as to the degree of the offense.

### 6.—Same—Evidence—Bill of Exceptions—Codefendant.

In the absence of bills of exception to the admission of testimony, the same cannot be considered on appeal; neither can the testimony of a codefendant in another case be considered; besides, the verdict was sustained by the evidence in any event.

Appeal from the district court of Erath. Tried below before the Hon. W. J. Oxford.

Appeal from a conviction of murder in the first degree; penalty, imprisonment in the penitentiary for life.

The opinion states the case.

*B. E. Cook* and *L. N. Frank*, for appellant.—On question of insufficiency of the evidence: Thomas v. State, 34 Texas Crim. Rep., 481; Lynch v. State, 24 Texas Crim. App., 350 Sherar v. State, 17 S. W. Rep., 621.

On question of the court's charge on murder: Turner v. State, 20 Texas Crim. App., 56; Alexander v. State, 17 id, 614.

On question of declaration of third party; Thomas v. State, 85. S. W. Rep., 1154.

On question of accomplice: Sessions v. State, 37 Texas Crim. Rep., 58 Armstrong v. State, 33 id, 417 Liskosski v. State, 23 Texas Crim. App., 165.

*C. E. Lane,* Assistant Attorney-General, for the State.—On question of court's charge on murder in the first degree; Walker v. State, 38 S. W. Rep., 788.

On question of verdict; Henderson v. State, 5 Texas Crim. App., 134; Woolridge v. State, 13 id, 443; Reynolds v. State, 17 id, 413.

HARPER, JUDGE.—Appellant was indicted, charged with murder and convicted of murder in the first degree, and his punishment assessed at imprisonment in the penitentiary for life.

It appears that Frank Wisnoski, appellant, resided in Thurber, and Walter Cukierski, Tom Mulkowski and John Zeilinski boarded with him. On Sunday night, May 26, 1912, the Polish residents of Thurber had a celebration at the home of Jake Sabota, and all the above four attended. Appellant and Cukierski rode their bicycles to the dance, leaving them on the outside. It appears that deceased, John Czerwinski, cut the tire of Cukierski's bicycle, and when it "popped" all four of the above named parties went out there, and some quarreling was engaged in. Another Polander, Frank Bida, seeing that trouble was likely to ensue, called the attention of the others

to the fact that deceased was drunk, saying he would doubtless make it all right when he got sober, and said he would take deceased home, and started with him, getting some seventy-five or eighty feet down the road with him, when, so says Frank Wenick, John Zeilinski, Walter Cukierski and Tom Mulkowski followed after them and took deceased away from Bida, and began striking and fighting deceased, pushing him along back towards the way they had come. He says appellant was calling to them, "Give it to him, give it to him." He furthermore adds that deceased fell, and when he fell to the ground "Cukierski kicked him several times—I don't know how many, and all the time deceased was calling out to Cukierski, or to some one: 'What are you beating me for?' or what are you kicking me for. I did not hear Cukierski reply to deceased further than to hear him cursing deceased. He had kicked deceased five or six times. Up to this time defendant had remained there about the bicycle somewhere, or had got a little ways from it in the direction of the deceased, and was cursing and telling them to give it to him. Defendant then came up, talking and cursing, on one side of deceased, while deceased was still lying on the ground, and said to deceased: 'You no go home yet?' or 'Why you never go home yet?' He then came to deceased and with his left hand raised deceased from the ground and then threw him back again. John Zeilinski was on the other side of deceased from defendant. I did not see any knife in the hands of any one at this time." This witness was some distance away on the gallery of Saboda's house, but he then went to deceased and found he was dead.

John Zeilinski says: "I was at the house of Jake Saboda, at the Sunday night dance, and saw defendant there. I saw some of the trouble between deceased and Walter Cukierski, and saw deceased after Walter Cukierski had knocked him down, and also saw Cukierski kicking deceased after he had knocked him down. He kicked him some three or four times after he was down, and during the time deceased was holding his arms over his head and face and groaning. Deceased at the time was lying on his side, with his arms and hands over his head, groaning and asking Cukierski what he was kicking him for. Cukierski kicked deceased three or four times when Frank Bida called out to Cukierski not to kick deceased any more, or he would kick his kidneys loose. After this Cukierski stepped back a little ways from deceased. Defendant at this time was standing not far from the gate in front of the Saboda house. I was standing behind Walter Cukierski who had stepped a little back from deceased, when the defendant came up to deceased, took hold of him and raised him up and turned him over a little. I went up to deceased as the defendant did and had stooped down towards him, as the defendant took hold of him and turned him over and I saw defendant stick his dirk knife in deceased, and saw the blood come from deceased's breast and from his nose and mouth, and some of it got on my pants as it spurted from deceased. I have on now the same pants I was wearing

at the time deceased was stabbed, and the same on which the blood from deceased spurted when he was cut.''

Dr. Dorsett says he found three wounds on the body of deceased; one between the fourth and fifth rib and near the nipple, which pierced his heart; another on the left shoulder, and another on the top of the head. The wound in the breast was the fatal wound. Appellant admits he had his dirk with him, but denies cutting deceased; denies he had any part in the difficulty, and says when he went to deceased he turned him over, and finding he was seriously hurt, he went for the officers and a doctor, and this he did do.

Appellant earnestly insists that the court erred in submitting the issue of murder in the first and second degree, claiming that the evidence does not raise these degrees of unlawful homicide; and further, that the court erred in refusing to charge on manslaughter. Our Code defines murder in Article 1140: ''Every person with a sound memory and discretion who shall unlawfully kill any reasonable creature in being, with malice aforethought, either express or implied, shall be deemed guilty of murder,'' and that murder is distinguishable.from every other species of homicide by the absence of circumstances which reduce  the offense to negligent homicide or manslaughter, or which will excuse or justify the homicide.

If appellant killed the deceased, the record nowhere suggests any excuse or justification for him doing so. No one testified to any act on the part of deceased which would authorize any one of the party to take his life. Neither is there any suggestion of negligent homicide in the record. Now what fact or circumstance appears in the record which would be ''adequate cause'' to reduce the offense to manslaughter? It doubtless is true that deceased cut Cukierski's bicycle tire and was guilty of a wrongful act in so doing; that Cukierski was a friend of appellant and boarded at his house. It may be that he, Zeilinski, Mulkowski and Cukierski all became enraged at him for so doing, but anger alone will not reduce an offense to manslaughter. Under our law manslaughter is predicated upon adequate cause, and unless there is an adequate cause in law to produce the passion, the homicide will not be reduced from murder to manslaughter, even though it may be committed under the influence of sudden passion rendering the mind incapable of cool reflection. (Clore v. State, 26 Texas Crim. App. 624.) Article 1131 of the Code specifically provides that ''an injury to property, unaccompanied by violence, is not adequate cause,'' and in this case all that is shown is an injury to the property of Cukierski, unaccompanied by any act of violence on the part of deceased, consequently the court did not err in refusing to charge manslaughter, and properly submitted for the consideration the issues of murder in the first and second degree, and had the killing taken place immediately upon discovering that deceased had punctured the tire of the bicycle, and defendant became enraged thereat, it would doubtless have been of no higher degree of offense than mur-

der in the second degree. But deceased is carried away by a friend, and he is pursued by at least three of them, who take him from Bida, and who strike him on the head, knock him down, kick him while he is down and otherwise maltreat him, appellant at the time ·encouraging them by calling to them to, "Give it to him," etc., and it is shown beyond dispute that some one of the four inflicted the mortal wound, and under such circumstances we think the court was not only right in submitting murder in the first degree, but the evidence amply supports the verdict.

Appellant also earnestly insists that if appellant is guilty of murder, Zeilinski is an accomplice, and the court should have so instructed the jury, and erred in submitting to the jury whether or not Zeilinski was an accomplice to the murder. That Zeilinski was engaged with Cukierski in making an assault on deceased there can be no question, but the evidence in this case would clearly indicate that the mortal wound was not inflicted at that time, but after Zeilinski and Cukierski had desisted at Bida's solicitation, the evidence shows that appellant and Zeilinski approached deceased and turned him over Zeilinski saying it was at this time appellant plunged the dirk into deceased breast, and he says: "I did not know at the time the defendant came up to the deceased that he had his knife out and was going to cut the deceased, and did not see the knife until he cut the deceased with it." If in fact witness at the time, as testified to by this witness, did not know appellant was going to make any character of assault on deceased he would not be a principal in the homicide if it then occurred, and while there is evidence that perhaps authorizes the jury to find that he was a principal in the homicide, yet it was a question of fact, and the court acted properly in submitting that issue to be passed on by the jury. (Carroll v. State, 62 S. W. Rep. 1061; Ransom v. State, 49 S. W. Rep. 582; Hankins v. State, 47 S. W. Rep. 992; Zollicoffer v. State, 16 Texas Crim. App. 312.)

If it should be held that Zeilinski was in law an accomplice, we think there is sufficient corroboration of his testimony tending to connect the defendant with the commission of the offense to sustain the verdict, and if Zeilinski's testimony is true it was a cold blooded assassination, the death wound being inflicted while deceased lay prostrate on the ground. That appellant went to deceased, turned him over, and had the dirk in his hand at the time is proven beyond dispute, and the other circumstances in the case, the nature of the wound, etc., point to him as the person who did the killing.

The State not having sought to impeach appellant, there was no error in the court refusing to permit him to prove that his reputation for truth and veracity was good. In Branch's Crim. Law (Sec. 877), the rule is correctly stated to be that proof of reputation of defendant or of any other witness for truth and veracity is not admissible where no attack has been made on the ·witness, but there is mere contradiction between the witnesses. (Hill v. State, 52 Texas Crim. Rep., 241;

Bass v. State, 65 S. W. Rep., 919; Jacobs v. State, 42 Texas Crim. Rep., 353; Burt v. State, 21 Texas Crim. App., 221.)

Appellant's complaint that the court should have instructed the jury not to consider the words passing between appellant and Joe Sikoski presents no error. This conversation was intermixed and intermingled with the beginning of the trouble with deceased and it was admissible in evidence, and being admissible, under the evidence in this case, it was proper for the court to permit the jury to consider it along with the other evidence in the case; at least a failure to instruct the jury in regard thereto would and could not have been injurious to appellant.

Appellant reserved a bill of exceptions to the verdict as returned. The verdict reads: ''We the jury find the defendant guilty as charged in the indictment of murder in the first degree, and assess his punishment by confinement in the State penitentiary for life.'' The contention is that as the indictment embraces all degrees of unlawful homicide, that the words ''guilty as charged in the indictment'' renders the verdict uncertain. But these words are followed by the words, ''of murder in the first degree'' and this renders the verdict certain and specific, and the criticism is hypercritical.

Those grounds in the motion complaining of the inadmissibility of testimony to which no bill of exceptions was reserved, cannot be reviewed by us. Neither can we consider the testimony of Walter Cukierski in connection with this case. It is true, in considering his case, we will review that record and consider his testimony, but as the law prohibits him testifying in this case, for us to consider it in this case, when it could not be introduced in the trial court, would be for us to override the law and to take into consideration testimony which the law prohibits being admitted on the trial of the case. Therefore the request of appellant that we consider the testimony of the Cukierski case in passing on this case must be denied, but if we did consider it, it would avail appellant nothing.

The judgment is affirmed.

*Affirmed.*

[Rehearing denied February 12, 1913. Reporter.]