sions of our own court. Mr. Wharton, in his work on Criminal Evidence, says in section 34:

"Evidence of collateral offenses becomes relevant to the principal charge when evidence thereof will serve to identify the accused as the person committing the offense for which he is on trial"—citing authorities from almost every state, among them being one decided by this court (Satterwhite v. State, 6 Tex. App. 609).

In this case Judge White held: Evidence of independent crimes is admissible when it is necessary to establish identity or in making out the guilt of the defendant by a chain of circumstances connected with the crime for which he is charged, citing Gilbraith v. State, 41 Tex. 569; Speights v. State, 1 Tex. App. 551; Persons v. State, 3 Tex. App. 240.

As shown in the original opinion, this evidence tended to identify appellant as the person who committed the assault at the time of the robbery. In Wright v. State, 56 Tex. Cr. R. 357, 120 S. W. 461, this court said:

"The testimony (of other crimes) was admissible to refute appellant's contention that he was not in the neighborhood at the time the homicide was committed. In other words, it was admissible to identify appellant as being the guilty participant in this homicide."

In Wyatt v. State, 55 Tex. Cr. R. 74, 114 S. W. 813, this court held:

"Appellant further objects to the evidence being introduced of the other attempted robberies. The evidence fails to identify the appellant with that degree of conclusiveness necessary, or at least there is not a strong case made out of identification. This being true, it was proper for the court to permit the introduction of the attempted robberies, since the evidence conclusively shows that whoever attempted the previous robberies did commit the robbery now under consideration. We have uniformly held that evidence which goes to show intent, or is part of the res gestæ, or that serves to identify the defendant as the party who committed the crime, although said evidence may prove other and different crimes, that same is admissible for the purpose stated."

Appellant also contends that as he adduced evidence from his standpoint, tending to show that Greer and Marion Long had entered into a conspiracy to send him to the penitentiary, the court should have instructed the jury on this issue of defense. This would be no defense, for if they had entered into such conspiracy it would be no reason why appellant should be acquitted, if he in fact committed the crime. Testimony that they had entered into such conspiracy was admissible as affecting the credit of Greer and Long as witnesses; that the jury might take into consideration such fact in passing on the weight to be given the evidence of these gentlemen—their motive in testifying as they did. Appellant cites those cases which correctly hold that the defenses of a defendant should be submitted to the jury. This is the law, but to show that a witness had a motive to swear falsely does not make a de-

fense for defendant; it simply weakens the testimony offered by the state. Appellant says we cited no authorities on this proposition, and challenges us to do so. We thought this so well established as to need no citation of authorities, but for appellant's benefit we will cite the cases of Rice v. State, 49 Tex. Cr. R. 585, 94 S. W. 1024; Carter v. State, 39 Tex. Cr. R. 347, 46 S. W. 236, 48 S. W. 508; and cases cited in section 810, White's Ann. C. C. P.

These are all the questions presented in appellant's motion for a rehearing, and after again carefully studying the record, appellant's brief, and authorities cited, we are of the opinion that these questions and none of them present error; and the motion for rehearing is overruled.

---

WALTON v. STATE.   (No. 3585.)

(Court of Criminal Appeals of Texas.   June 2, 1915.   Rehearing Denied June 25, 1915.)

1. CRIMINAL LAW ⬤⇒596 — CONTINUANCE — RIGHT TO.

The prosecutrix agreed with accused as to a conversation to which accused testified. A witness to the conversation who was also desired by the state was absent. *Held*, that the absence of such witness did not, where accused had not filed his application for process for him with the proper officer, entitle accused to a continuance.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1328–1330; Dec. Dig. ⬤⇒596.]

2. WITNESSES ⬤⇒388—IMPEACHMENT—FOUNDATION.

Though the witness be the prosecutrix, she cannot be impeached by proof of inconsistent statements out of court unless proper foundation is laid.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1233–1242, 1246; Dec. Dig. ⬤⇒388.]

3. CRIMINAL LAW ⬤⇒429—CORROBORATION.

In a prosecution for rape, where the age of the prosecutrix was in question, accused attempted to show that her parents had married at an earlier date than they testified. They testified that they were married under license issued on a certain day. *Held*, that the record of the license was properly admitted in evidence.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1018, 1020; Dec. Dig. ⬤⇒429.]

4. WITNESSES ⬤⇒414—CORROBORATION.

In such case, the mother of the prosecutrix may introduce a school certificate as to the girl's age made long before the prosecution arose.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1287, 1288; Dec. Dig. ⬤⇒414.]

5. CRIMINAL LAW ⬤⇒811—TRIAL — INSTRUCTION.

Where accused contended that the prosecution was the result of a conspiracy, it is improper for the court to single out that testimony and charge that if the prosecution was the result of conspiracy, and the jury had reasonable doubt of accused's guilt, they should acquit.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1787, 1969–1972; Dec. Dig. ⬤⇒811.]

---

⬤⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from District Court, Coryell County; J. H. Arnold, Judge.

Will Walton was convicted of rape, and he appeals. Affirmed.

Mears & Watkins, of Gatesville, for appellant. C. C. McDonald, Asst. Atty. Gen., for the State.

PRENDERGAST, P. J. Appellant was convicted of rape on a girl under 15 years of age, and his punishment assessed at 5 years in the penitentiary—the lowest prescribed by law.

We see no necessity for reciting the evidence. It was amply sufficient, both by positive and direct testimony, as well as other facts and circumstances, to authorize the jury to convict him.

[1] Appellant sought a continuance on account of the absence of Robert Smith and J. R. Hill, which the court refused. In his bill he alleged that it would be his theory of the case that the indictment and prosecution for the offense charged were brought about by a conspiracy between T. A. Blair, Ollie Wilson, and the prosecuting witness, Thelma Turpin, and that he expected to show by Smith that the prosecuting witness called in his place of business and informed him that Blair and Wilson had been trying to get her to enter into a conspiracy against him. And he expected to show by the witness Hill that Hill had had a conversation with Blair, and that Blair had told said witness of the conspiracy, and that there had been a frame-up by said Blair, Wilson, and Thelma Turpin, and that Blair threatened to appear before the grand jury and have said bill of indictment returned against him, unless he put up certain money. In allowing the bill, the court did so with this explanation:

" * * * That as to the witness Smith, named in the application for a continuance, the prosecutrix, Thelma Turpin, testified to the conversation she had with the defendant in his store in Gatesville, Tex., at the time referred to in the application, and the defendant also testified to the same thing, said witnesses agreeing on it, and no witness denied it, and the state did not contradict it or in any way call it in question. See Thelma Turpin's testimony, page 12, Statement of Facts; and Will Walton's testimony, page 41, Statement of Facts. The state's contention was, as this evidence would indicate on the part of Thelma Turpin, that she was under defendant's power and influence and extremely friendly to him; what she told Walton in his store was an admitted fact, and in no way called in controversy. As to Hill, it was only claimed by defendant that he wanted to prove certain statements made by one Blair to the witness Hill, prior to the prosecution of the defendant. This would not have been material evidence for defendant; at most, its character was only in the nature of impeachment and would not justify a continuance. Hill was a state's witness, and the state had process issued for him. The defendant did not follow up his application for process and have it issued, or even sent to the proper officer to be served. The district attorney contended that Hill's testimony would have been favorable to the state. With this explanation, the bill is allowed and will be made a part of the record."

The action of the court, in refusing a continuance as explained by the judge, was correct.

[2] Appellant also complains that the court erred in sustaining the state's objection to these questions asked by him of his witness Miller Roberson:

"You had a conversation with Thelma Turpin at Leon Junction, did you not? In said conversation did she, or not, make a statement to you with reference to the defendant's case?"

The state objected to the answers of the witness because no predicate had been laid. The court sustained the objection. In allowing and approving this bill he did so with this explanation:

"I understand that defendant contends by the above bill of exception that a witness who happens to be the injured party stands on a different basis to other witnesses, and that what such a witness says is admissible as original evidence. I do not so understand the law. Thelma Turpin was not asked by defendant when on the stand if she had told Miller Roberson 'that the defendant was not guilty, and ought not to go to the penitentiary,' and defendant did not ask that she be recalled so that he could lay this predicate. However, Miller Roberson would not have testified as contended in the bill. In a signed statement now before me, said witness states: 'I do not remember whether she (Thelma Turpin) said Will Walton had ever had intercourse with her or not.'"

This bill was accepted as thus qualified, and appellant made no objection to the qualification, and he is bound thereby. This shows no error.

[3] The question of the date of the marriage of the prosecuting witness Thelma Turpin's parents became material. Both her father and mother testified. The appellant, in cross-examination of each of them, asked them particularly about it. In effect, he sought to show they married several years before they testified they did, and he contended that the prosecuting witness was much older than she and they testified she was. The state, in rebuttal, had the county clerk produce the record of marriage certificates. This record of the marriage certificates was then admitted in evidence over his objections. The court, in approving the bill, did so with this explanation:

"Both the father and mother of Thelma Turpin testified that they married under a marriage license issued in March, A. D. 1898, and were married in March, 1898, by Rev. J. S. Williams in Coryell county, Tex."

The bill does not give this marriage certificate, nor the substance of it. If we could go to the record, it would show a regular marriage license, issued by the county clerk of Coryell county, dated March 20, 1898, authorizing the marriage of W. H. Turpin and Miss Bessie Browning, properly returned, executed by J. S. Williams on the same day, and filed March 26, 1898, duly recorded, giving the book and page of the license record. This evidence was clearly admissible.

[4] As stated, the age of the prosecuting witness was, of course, material. She and her mother both testified that she was born

January 4, 1900. Appellant attacked their testimony on this issue. The court thereupon permitted the state, in rebuttal, to identify, prove up, and introduce the sworn scholastic census, signed by Mrs. Turpin in the year 1912, giving the age, date of birth, etc., of Thelma, over appellant's objections that it was hearsay, an ex parte affidavit only, and inadmissible. In approving the bill the court did so with this qualification and explanation:

"On the trial of this case, the prosecuting witness swore that she was under 15 years of age at the time the defendant had intercourse with her, and her mother swore that she was born on January 4, 1900, and was consequently under 15 years of age at the time of the alleged act of intercourse with the defendant. In order to impeach both the prosecutrix and her mother, Mrs. Bessie Turpin, the defendant claimed that they had each together stated to one Woods that prosecutrix was 18 years old then. Mrs. Turpin's evidence being thus attacked as to her statements of her daughter's age, I permitted the state to show that, long prior to the time she testified in this case, she had stated to Nabors in writing and under oath that Thelma Turpin was born on January 4, 1900; that being the same statement she made on the stand as to her daughter's birth. However, I will add that neither in argument on the trial of the case nor in defendant's motion for a new trial was it contended that the evidence was insufficient to show that prosecutrix was under 15 years of age at the date of the alleged act of intercourse with defendant. The jury gave him the lowest term for rape."

The court correctly admitted said documents in evidence. Section 1194, subd. 4, Wh. Ann. C. C. P.

[5] As shown above, appellant seems to have contended, before the trial began, that there was a conspiracy against him by Blair, Ollie Wilson, and Thelma Turpin to extort money from him and to have him indicted for this offense. Apparently he abandoned this, because he asked no charge on the subject at all and made no objection to the court's charge on that account; but he did ask a charge, which the court refused, to the effect that if the jury believed that Ollie Wilson, Thelma Turpin, and Mrs. Turpin, had entered into a conspiracy against him, and that the indictment was brought about by or through said conspiracy, and they further believed he did not have intercourse with Thelma Turpin, or had a reasonable doubt of it, to acquit him. In this requested charge, he does not, in any way, state what the conspiracy was. However, in no event would it have been proper for the court to have singled out the question of either of said claimed conspiracies and charged thereon, for it would have been in effect a comment upon the weight of the testimony, which is expressly prohibited by statute. Such a claim by an accused on the trial may be shown, if it can, by evidence, and, of course, properly commented on in argument before the jury to show the bias and prejudice of the witnesses against him and to attack the truthfulness of any of their incriminating

evidence against him. But the court should not specially charge thereon. We expressly so hold in the case of Collins v. State, 178 S. W. 345, from Tarrant county, this day decided. The court committed no error in refusing appellant's charge on the subject.

The court did not err in refusing to give appellant's special charge requiring the jury to peremptorily acquit.

There is nothing else in the record that requires any discussion.

The judgment is affirmed.