## J. M. MATTHEWS v. THE STATE.

No. 4144. Decided October 4, 1916.

1.—Occupation—Intoxicating Liquors—Sufficiency of the Evidence.

Where, upon trial of pursuing the occupation of selling intoxicating liquors in local option territory, the evidence sustained the conviction, there was no re-

versible error, although defendant attacked the State's principal witness as un- · worthy of belief; this was a question for the jury.

## 2.—Same—Indictment—Law in Force—Order of Election.

It is not necessary to allege the date of the local option election and putting the same in force, if the indictment alleges that the offense occurred after the law was in force, nor is it necessary to allege the orders of the court for the local option election, and the indictment being sufficient, there was no error in overruling the motion to quash. Following Mizell v. State, 59 Texas Crim. Rep., 226, and other cases.

## 3.—Same—Evidence—Reputation of Witness—Cross-examination.

Where, upon trial of pursuing the occupation of selling intoxicating liquors in local option territory, one of defendant's witnesses testified that the general reputation for truth and veracity of the State's principal witness was bad, there was no error, on cross-examination of defendant's witness, to ask him whether he was a drinking man to show his sympathy for the defendant, the witness answering that he did not drink when he could get it, but might take a drink once in a while.

## 4.—Same—Evidence—Cross-examination.

Where the State contended that defendant on Saturdays went to Dallas on the interurban, returning that night with more or less whisky and kept it from time to time in his room at the boarding house, after the State's main witness had testified to finding several bottles of whisky in the room where appellant had made the alleged sale, and defendant had introduced his landlord who testified that he never saw any whisky in said room, there was no error in permitting the State, on cross-examination of his witness, to undertake to show that defendant did go to Dallas every Saturday night, etc.; witness answering that he did not know whether they went to Dallas or not, thus failing to prove the State's contention. Following Hart v. State, 57 Texas Crim. Rep., 21, and other cases. Harper, Judge, dissenting.

## 5.—Same—Evidence—General Reputation.

Where, upon trial of pursuing the occupation of selling intoxicating liquors in local option territory, the defendant objected to the court's refusal to permit him to have his witnesses testify to defendant's good general reputation for truth and veracity, because such reputation had not been attacked, there was no reversible error. Harper, Judge, dissenting.

## 6.—Same—General Reputation—Rule Stated.

It is well established that if the State attacks defendant's general reputation for truth and veracity, or attempts to impeach him by proving contradictory statements, defendant should be permitted to introduce proof of his general good reputation for truth and veracity, but the fact that he gives testimony disputing that offered by the State, would make no such testimony admissible. Following Pettis v. State, 68 Texas Crim. Rep., 221, and other cases. Harper, Judge, dissenting.

## 7.—Same—Evidence—Other Transactions—Cross-examination.

Where, upon trial of pursuing the occupation of selling intoxicating liquors in local option territory, the State's witness testified to finding liquor stored in defendant's room pending the time defendant made the sales to him, which defendant denied, and introduced a witness to support his testimony, who testified that defendant only had a little whisky, something like half a pint, with which they made eggnog, there was no error on cross-examination by the State, to show that defendant had five pints of whisky in his room on the very day he was arrested. Harper, Judge, dissenting.

Appeal from the District Court of Collin. Tried below before the Hon. M. H. Garrett.

Appeal from a conviction of following the occupation of selling intoxicating liquor in local option territory; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*J. A. Dial,* for appellant.—On question of general reputation: Crook v. State, 27 Texas Crim. App., 198, 11 S. W. Rep., 444; Loomis v. Stewart, 24 S. W. Rep., 1078; Phillips v. State, 19 Texas Crim. App., 158; Farmer v. State, 35 Texas Crim. Rep., 270, 33 S. W. Rep., 232; Luttrell v. State, 40 Texas Crim. Rep., 651, 51 S. W. Rep., 930; Harris v. State, 49 Texas Crim. Rep., 338; Butler v. State, 52 Texas Crim. Rep., 528, 107 S. W. Rep., 840; Goode v. State, 57 Texas Crim. Rep., 220; Wilkerson v. State, 60 Texas Crim. Rep., 388.

On question of showing possession of other liquors: Castleman v. State, 39 Texas Crim. Rep., 1, 44 S. W. Rep., 494; Myers v. State, 52 Texas Crim. Rep., 558, 108 S. W. Rep., 392.

On question of insufficiency of the indictment: Mizell v. State, 59 Texas Crim. Rep., 226, and cases stated in opinion.

*C. C. McDonald,* Assistant Attorney General, for the State.

PRENDERGAST, PRESIDING JUDGE.—This is an appeal from a conviction for pursuing the occupation or business of selling intoxicating liquors in prohibition territory, with the lowest penalty assessed.

The evidence by the State's witnesses, which was evidently believed by the jury, was amply sufficient to sustain the conviction, although disputed on some material points by others. Appellant now attacks the State's principal witness vigorously as unworthy of belief. There is more or less testimony in the record supporting the testimony of this witness. It is evident this attack was also made in the court below. The jury and the trial judge heard his and all the other testimony and were more competent to judge of the truth of his testimony than this court can possibly be. They are by law made the exclusive judges of the credibility of the witnesses and the weight to be given their testimony. We can not legally disturb the verdict.

With the proper preliminary and concluding allegations, the indictment, which was filed November 26, 1915, alleged, in substance, that on November 1, 1915, in Collin County, Texas, and after the qualified voters of said county had determined at an election held in accordance with the law that the sale of intoxicating liquors should be prohibited in said county and after the Commissioners Court of said county had made and entered an order to that effect and after said order had been published by the county judge as required by law, appellant did then and there unlawfully engage in and pursue the occupation and business of selling intoxicating liquors in violation of said law, which law was then and there in full force and effect in said county, and while so engaged in said occupation and business, he did then and there unlaw-

fully make five different sales of intoxicating liquors to J. W. Pierce and other sales to divers other persons to the grand jurors unknown; all of said sales being in violation of said law and within three years next preceding the filing of the indictment, and said business and occupation not then and there being permitted by law.

We think this indictment is sufficient under the statute and decisions, and that the cases cited by appellant, Mizell v. State, 59 Texas Crim. Rep., 226, 128 S. W. Rep., 125; Slack v. State, 61 Texas Crim. Rep., 372, 136 S. W. Rep., 1073; Stephens v. State, 63 Texas Crim. Rep., 382, 139 S. W. Rep., 1141; Leonard v. State, 68 Texas Crim. Rep., 549, 152 S. W. Rep., 632; and Mills v. State, 77 Texas Crim. Rep., 258, 178 S. W. Rep., 367, instead of being authority for holding said indictment bad, have the contrary effect. In this offense the date of the election and putting the law in force is immaterial further than to allege that the law was in force before the alleged offense was committed, which was done in this case. No authorities hold that in such an indictment it is necessary to give the orders for the prohibition election. The allegations made in this instance include all that was necessary on that point.

Mr. Smart, one of appellant's witnesses, testified that the general reputation of Mr. Pierce, the State's material witness, for truth and veracity was bad. On his cross-examination by the State this occurred: The county attorney asked him if he was a drinking man. He answered: "What do you call a drinking man?" The county attorney replied: "A man that drinks whisky whenever he can." Defendant objected, because it was on an immaterial matter and would not affect his credibility. The county attorney stated that it might show his sympathy, and the court stated he would not compel the witness to answer, but he might answer if he wanted to, or he might decline to answer. The witness then stated: "I don't know what you call a drinking man." The county attorney repeated in substance what he had stated before. The witness answered: "I don't drink whenever I can get it, but I might take a drink once in a while." We think this was not improper cross-examination under the circumstances of this case; but even if it was, the answer of the witness would show no injury to appellant.

The State contended that appellant on Saturdays went to Dallas on the interurban, returning that night with more or less whisky, and that he kept it from time to time in his room at his boarding house. The State's main witness had testified to finding several bottles of whisky in a box under appellant's bed in his room pending the time the State's witness testified appellant had made the respective sales to him. Appellant introduced his landlord, Mr. Hefner, who testified that he never saw, and in effect appellant never kept, any whisky in his room, and that he never found any therein. The State, in crossing this witness, undertook to show by him that appellant went to Dallas every Saturday night and returned therefrom to McKinney about midnight. Appellant objected to this character of examination of his

landlord. However, the landlord testified he did not know whether he went to Dallas or not; in effect, he did not know where he went on Saturday nights. This testimony, like that passed upon just above, was proper cross-examination, and shows no injury to appellant. The answer of the witness failed to prove the State's contention on this point, and his bill presents no error. Hart v. State, 57 Texas Crim. Rep., 21; Warthan v. State, 41 Texas Crim. Rep., 385; Baker v. State, 45 Texas Crim. Rep., 392; Harding v. State, 49 Texas Crim. Rep., 601; Sweeney v. State, 65 Texas Crim. Rep., 593, and cases cited.

His sixth bill, complaining of the question by the county attorney on cross-examination of · his witness McCowan, presents no reversible error.

Appellant's seventh and eighth bills of exceptions are very lengthy. They contain some nineteen pages of typewritten questions and answers of appellant himself on cross-examination by the State, and each winds up with an objection to the court's refusal to permit him to have two witnesses testify, respectively, to his good general reputation for truth and veracity. The State objected to these witnesses so testifying because his said general reputation was not an issue. The court sustained the objection, stating that he would not permit the defendant to introduce evidence to sustain his reputation for truth and veracity unless such reputation had been attacked. We think that neither bill shows that the witness was impeached, or attempted to be impeached, in such a way as would authorize him to introduce witnesses to establish his reputation in the respect mentioned. The rule is well established that if the State had attacked his general reputation for truth and veracity by any witness, or had attempted to impeach him by proving contradictory statements, then he would have been permitted to have introduced such proof, but until such contingency arises, the fact that he gives testimony disputing that offered by the State would make no such testimony admissible. Pettis v. State, 68 Texas Crim. Rep., 221; Lacy v. State, 63 Texas Crim. Rep., 189; Allen v. State, 64 Texas Crim. Rep., 225; Williams v. State, 67 Texas Crim. Rep., 287; Downing v. State, 61 Texas Crim. Rep., 519; Wisnoski v. State, 68 Texas Crim. Rep., 382, 153 S. W. Rep., 316; McCue vs. State, 75 Texas Crim. Rep., 137, 170 S. W. Rep., 280, and many other cases collated in 1 Branch's Ann. P. C., p. 115.

As stated above, the State's main witness had testified to finding liquor stored in appellant's room under his bed pending the time he testified appellant made the sales to him alleged in the indictment. Appellant not only denied this, but he introduced Mr. Heffner, his landlord, who on direct examination supported appellant in his testimony on this point. The State then took him on cross-examination on this point, and the witness testified that he had seen five pints of whisky in his room on the very day he was rearrested; the court qualifying the bill as follows:

"The witness W. A. Heffner was introduced by the defendant and

defendant's attorney proved by him that Mr. Matthews, the defendant, was rooming at his house when he was arrested on the charge of pursuing the occupation of selling intoxicating liquor and continued to room there after he made bond and was rooming there when he was surrendered by his bondsmen, and then proved by said witness that he had seen no whisky in said Matthews' room but one time during the entire time that Matthews was at his house and that was during Christmas, and that was something like a half pint with which they made eggnog.

"After the defendant had elicited on direct examination from the said witness the facts as above stated the testimony that he had only seen whisky in defendant's room one time and that was the half pint Christmas, the court then permitted the State to prove by said defendant's witness on cross-examination that he had seen five pints in his room on the very day that defendant was rearrested." We think this was legitimate cross-examination of this witness under the circumstances, and as qualified by the court, his bill presents no error.

We have not discussed each of appellant's bills of exceptions, though we have considered them all. None of them present any reversible error.

The judgment is affirmed.

*Affirmed.*

HARPER, Judge (dissenting).—I can not give my assent to the affirmance of this case, and respectfully enter my dissent for the reasons hereinafter stated. Appellant was prosecuted for pursuing the occupation of selling intoxicating liquors and making two sales to J. W. Pierce. By this witness Pierce alone is appellant shown to have made any sales of intoxicating liquors. No other witness testifies to any sale. This witness testifies to purchasing intoxicating liquor from appellant on five different occasions from October 11th to October 25th. He admitted that he had theretofore been indicted in Grayson County charged with theft of a diamond; that he had been indicted charged with theft of a horse in Fannin County; that he was indicted in Hunt County charging him with forgery; and that he had been arrested in that county charged with burglary, but testifies he was convicted in none of those cases. He also testified that he was now under indictment in Titus County charged with embezzlement, and also under indictment in the same county charged with forgery; that these latter two cases were still pending against him. He also testified that he was employed to come to Collin County to catch violators of the prohibition law, and received $2.50 a day and all expenses, including the price of liquors he says he purchased. The record discloses that he received $102 from October 10th to October 25th.

J. W. St. Clair, T. C. Norman, T. E. Smart, and J. R. Nelson testify they know the State's witness, and his reputation for truth and veracity in the community in which he lived is bad. It is upon the testimony of this witness that the State seeks to and will incarcerate appellant in

the penitentiary. However, the jury apparently believed him, and we perhaps should not disturb the verdict if there was no error in the record, but when the State relies upon testimony of this character to take away from a citizen his good name and liberty, we should closely scrutinize the record, and if any error that could have been hurtful and harmful is committed the case should be reversed.

As before stated, no one testifies to a sale of whisky by appellant except the witness Pierce. Appellant takes the stand and in most positive language denies ever making a sale to Pierce. He testifies on one occasion he remarked in Pierce's presence that he was going to Dallas, and that Pierce gave him $2.60 to bring him back some whisky and beer, and this he says he did. Walter True testified that he was present when a man about the middle of October requested appellant to bring him some whisky and beer; that four or five were present when this occurred, but he could not identify the man who made the request. Appellant testifies that on another occasion he met State's witness Pierce at the Savoy barbershop and they all threw in and made up $2 and purchased the whisky from Bill Stinson, and on still another occasion appellant, Mr. Duddy, and Pierce made up a dollar and purchased some whisky from a negro at Ed Cates' restaurant; that Pierce got the whisky from the negro. That at no other time and under no other circumstances did he and Pierce have any dealings, and he never at any time sold any whisky to Pierce. This made a clear issue between the testimony of the two, and the State on cross-examination, to render appellant as little entitled to credit as a witness as Pierce had shown himself to be, rigidly cross-examined appellant and asked him if he did not testify that they secured one bottle of the whisky from Bill Stinson, and if he did not know that Bill Stinson was under indictment for selling intoxicating liquors, and that Stinson was then a fugitive from justice, all of which questions the court, over objection, required the witness to answer, and after he had answered, propounded to him the following question and statement: "And you now come and say that this man who has gone from here and who is also under indictment, that the whisky was bought from him? And that is just as true as anything else you have testified to, isn't it?"

The State then took him up and asked him about the bottle of whisky that appellant testified was purchased by Pierce, Duddy and himself from a negro, and had him testify that he did not know the name of the negro, but they were told by Abe Gunn that they could get the whisky from the negro, and further that Abe Gunn was then under indictment for selling intoxicating liquor.

The State next asked him, "You have been convicted, haven't you, for transporting liquor into the State of Oklahoma?" and when appellant answered, "No," State's counsel asked him, "Have you been charged with transporting liquor into the State of Oklahoma?" The witness answered, "No." State's counsel then asked appellant if in the habeas corpus trial for bond in this case he did not testify that "he had plead

guilty to transporting liquor into the State of Oklahoma." The witness answered emphatically, "No, I did not," and when he so answered State's counsel remarked, "That is just as true as anything else you have sworn to." State's counsel then asked appellant, "I will ask you if you have not been charged with bank robbery in the State of Arkansas?" to which question he answered, "No." State's counsel then asked him if "He had not been separated from his wife for the past eighteen months?" The court sustained the objection to this last question, and the witness was not required to answer it, and the jury and this court do not know what his answer would have been. Many questions of similar character and kind were permitted to be asked, but these are sufficient to present the question upon which I enter my dissent.

This was unfair examination if the State did not think it could prove and would offer to prove that the matters had occurred. The record discloses the State offered no proof that appellant had been guilty of either of the things inquired about, and the questions propounded were, therefore, merely propounded to impair appellant's credit as a witness. Had the State been in position to prove that appellant had been indicted for these different offenses, it might be and probably was proper cross-examination, but after the State had thus sought to impair his credit as a witness, appellant offered as a witness O. B. English, who testified he had known appellant for fifteen years, and J. M. Cox, who testified that he had known appellant since he was a small boy, and that he, Cox, was county clerk of his home county. After they had so testified they each were asked, "If they knew appellant's reputation for truth and veracity in the community in which he lived?" and the court sustained the State's objection to such question. The bill shows they, and each of them, would have testified they knew the reputation of appellant, and his reputation for truth and veracity was good.

This is the error the court fell into. After permitting the State to so severely assail appellant on cross-examination in order to impair his credit as a witness before the jury, appellant was entitled to put his reputation for truth and veracity in issue, and to have proven that it was good by the witnesses named. Under the circumstances, in the writer's opinion, this was such error as should result in a reversal of the case. Matthews, appellant, was raised in Hopkins County, and has lived in Collin County for a little more than a year only, and the witnesses who had known him from his childhood were the ones he desired and did call to prove his reputation. In the case of Butler v. State, 52 Texas Crim. Rep., 528, it is held that where the cross-examination brings the case within the exception which provides where there is an attack on the evidence given by appellant, statements involving imputation of bad faith and the assertion of crime against him, and where the cross-examination involves an attack upon the integrity and truthfulness of his substantial defense, it is error to exclude evidence

of good reputation for truth and veracity. If there is any case which could be brought within that rule without the introduction of direct impeaching testimony, we think the facts copied above show this to be such a case. It charged crime in two instances; recent fabrication of explanation after other witnesses had left, etc. See also Thompson v. State, 74 Texas Crim. Rep., 145; Wilkerson v. State, 60 Texas Crim. Rep., 388; Alderman v. State, 53 Texas Crim. Rep., 525. In the case of Walton v. State, 77 Texas Crim. Rep., 413, 178 S. W. Rep., 358, the only way it was sought to discredit the witness Mrs. Bessie Turpin was to ask her if she had not made statements contradictory to her testimony on the trial as to the age of the girl. Her testimony as to this matter was permitted to go uncontradicted; no witness was placed on the stand to impeach Mrs. Turpin, yet because the appellant on cross-examination had thus cross-examined her, this court held the State could not support the witness. The writer did not dissent in that case because he had entered a dissent to such a rule of law in Thompson v. State, 74 Texas Crim. Rep., 145, and other cases, and did not deem it proper to encumber the reports with a continuous dissent on the same proposition. But he respectfully desires to enter his dissent to it being held no error to permit the State to support its witness under such circumstances, and yet refuse to permit a defendant to give in evidence supporting evidence under similar circumstances.

The record discloses appellant was arrested the latter part of October, 1915, charged with this offense, and bound over to the grand jury. His room was then searched and no intoxicating liquor found. The grand jury returned a bill against him November 26, and he was rearrested and gave bond. In February following one of his bondsmen surrendered him, and his room was again searched in February, and the State was permitted to introduce evidence that in February (over three months after he was charged with having committed this offense) the sheriff found in his room five pint bottles of Joel B. Frazier whisky, and the five bottles were introduced in evidence. The writer is aware that there are several cases holding (and we would not be understood as dissenting from that rule) that if whisky is found in one's possession contemporaneous with the alleged violation of the law, such fact is admissible in evidence. And in one case it was held a month's time was not too remote, but now the rule is extended to over a period of three and one-half months thereafter. Such has not heretofore been the rule according to the writer's understanding, and if three and one-half months thereafter is not too remote to be held to be contemporaneous with the transaction, we are at a loss to understand what time limit will be held to be not contemporaneous. The trial court, in his qualification to the bill, seems apparently to think it was rather remote, and places his ruling on a different ground. He says appellant placed W. A. Heffner, with whom he boarded while in McKinney, on the stand to prove that he was in the room occupied by him every day, and that appellant had no whisky in the room at any time except

Christmas, when he had a half pint, with which they made an eggnog, and he permitted the State to prove that the sheriff found five pints in the room when he rearrested appellant in February—this to impeach the witness Heffner. Unfortunately for the State's contention, though, the record discloses (if witnesses are to be believed) the whisky was not appellant's and had not been placed there by him. He so testified, and Frank McCowan, a lineman of the Texas Traction Company, swears the whisky belonged to him; that he placed it in appellant's room, and that it was in his tool sack. That he had placed it there until he came back off the line. The State offers no proof to contradict this evidence—all it did was to ask McCowan: "Now, when did you decide that you could come up here and tell that you put this whisky in this man's room that you had never met before?" The asking of such question would not raise a conclusive presumption that he and the other witnesses had sworn falsely about the matter, but if it be conceded that it was appellant's whisky that was found in the room in February, 1916, when he had been arrested and charged with an offense in October, 1915, and the testimony was admissible for the purpose of impeaching Heffner, the court, while stating the testimony was admitted for that purpose in approving the bill filed after the adjournment of court, did not so treat the testimony and thus limit it during the trial of the case nor in his charge to the jury. The testimony was admitted, and no limitation placed thereon in the charge or otherwise, when the rule of law is: "If the impeaching testimony can be used by the jury to establish any fact in the case, other than as affecting the credit of a witness, it is error to fail to limit it in the charge of the court." Rowan v. State, 57 Texas Crim. Rep., 625, and cases cited in sec. 873, Branch's Crim. Law. There are a number of other bills of exception in the record, but as the above were all that I gave my brethren notice I would dissent on at the time the original opinion was handed down, I will not discuss the others. I want to unequivocally put myself on record as favoring one rule of law both for the State and for the defendant.