## JESS JOHNSON v. THE STATE.

### No. 5411.   Decided June 18, 1919.

**1.—Local Option—Intoxicating Liquors—General Reputation—Contradicting Witness—Other Offenses.**

Where, upon trial of a violation of the local option law and selling intoxicating liquors in violation thereof, no attack had been made by the defendant upon the credibility of the State's witness who was supported by proof of his good reputation, it was reversible error to permit the State to interrogate him on matters not connected with any evidence developed by the defendant. Following Campbell v. State, 62 Texas Crim. Rep., 561, and other cases.

**2.—Same—Bolstering Up Witness—General Reputation—Rule Stated.**

The bolstering up of a State's witness by proof of his general reputation under circumstances as presented in the instant case was unauthorized and reversible error. Following Britt v. State, 21 Texas Crim. App., 221 and other cases.

Appeal from the County Court of Hopkins. Tried below before the Hon. T. J. Tucker.

Appeal from a conviction of a violation of the local option law; penalty. a fine of twenty-five dollars, and twenty days confinement in the county jail.

The opinion states the case.

*J. A. Dial,* for appellant.—Cited: Hankins v. State, 57 Texas Crim. Rep., 152, 122 S. W. Rep., 21; Browder v. State, 18 id., 197; Butler v. State, 52 Texas Crim. Rep., 528, 107 S. W. Rep., 840.

On question of insufficiency of the evidence: Scott v. State, 70 Texas Crim. Rep., 57, 153 S. W. Rep., 871; Latham v. State, 71 Texas Crim. Rep., 552, 160 S. W. Rep., 455.

*E. A. Berry,* Assistant Attorney General, for the State.

MORROW, JUDGE.—Appellant was convicted of a misdemeanor on a charge of unlawfully selling intoxicating liquors. .

The State's witness Osteen testified that he told appellant he wanted to buy some whisky, and was told by appellant that a man would be there that evening from whom he thought it could be obtained; that later in the evening appellant told him he could get it for him. The witness then gave him the money, and about an hour later received from appellant a quart of whisky. He said that he understood from appellant that a man from Mt. Pleasant . would be there who was engaged in the business of selling liquor, and that it was from him that it was expected the whisky would be obtained. The appellant claimed that he did obtain the whisky from a strange man who was at a gin which belonged to the appel-

lant and who was engaged in the business of selling intoxicating liquors to men who were building a pipe line and others who could be trusted not to disclose it. He claimed that he used the money that the State's witness gave him in purchasing the whisky which he deliverd to the State's witness, and that in the transaction he had no interest, but was acting merely for the accommodation of the State's witness in purchasing the whisky for him. He introduced a number of witnesses who claimed to have seen the party who was selling whisky and whom some af them described as a boot-legger, and some of them testified to having seen the appellant purchase the whisky from him. The State introduced witnesses who were about the premises where the boot-legger was described to have been, and they testified they had seen no such individual as that referred to, and an issue of fact was raised as to whether the appellant obtained the whisky in the manner that he described, or whether he had obtained the whisky elsewhere and made a sale of it upon his own account.

At the time of appellant's arrest he was in a drug store belonging to a man named Griffith. It was shown by the State's testimony that in the back end of this drug store there was stored some whisky on the occasion of appellant's arrest, though it was not shown to have been in his possession. He introduced Griffith as a witness to show that he Griffith had brought whisky from Mt. Pleasant and put it in his drug store. The State, in cross-examination of him, showed that he was charged with a similar offense and developed circumstances throwing suspicion upon him, among other things, that there were a number of whisky bottles around or near his drug-store. For the purpose of laying a predicate to impeach him he was asked if he had not made a statement on a certain occasion that he intended to become a witness for the appellant and swear falsely in order to clear him. In the course of the cross-examination he stated that there was prejudice against him, and named three persons' whom he described as "pimps" and which he explained to mean that they were unduly active in his prosecution and that of the appellant. In further cross-examination the State developed that the persons named by him and described as "pimps" were prominent citizens, and subsequently by several other witnesses proved that the general reputation of these persons as law-adiding citizens was good, and later the State introduced one of the parties named by the witness Griffith, and whose general reputation in the respect mentioned had been proved, and proved by him affirmative circumstances to show that appellant's defense was fabricated. He testified that he had not seen the person described as a boot-legger, though he had had opporturnity to do so, and that he had seen no stranger of the description given of the boot-legger in the vicinity. The proof of the general reputation of the parties named as law-abiding, honest, fair dealing citizens, was objected to as irrelevant and as improper evi-

dence in that it was an effort to bolster up and support by proof of reputation persons who were not witnesses, and that appellant's defense was prejudiced. State's counsel, having on cross-examination pursued the inquiry of the witness Griffith and developed by him that he regarded certain individuals in the community as unduly active in the prosecution of appellant, .was dealng with a matter not germane to the direct examination of the witness Griffith, and brought into the case collateral matters upon which the State was not authorized under the law to contradict or impeach him. The State did so, however, by proving that the men whom he described as ''pimps'' were men of high character and prominent in the community, and it developed that one of them gave important testimony tending to break down the appellant's defensive theory. The impropriety of contradicting the witness Griffith by the introduction of extraneous testimony to show the character of the person whom he described is illustrated by numerous cases cited by Mr. Branch in his Annotated P. C., Sec. 178; among them, Brite v. State, 10 Texas Crim. App., 368; Brittain v. State, 36 Texas Crim. Rep., 410; Campbell v. State, 62 Texas Crim. Rep., 561. And that the bolstering up of the State's witness by proof of his general reputation under the circumstances was unauthorized is shown by reference to many of the decisions of this court; among them, Britt v. State, 21 Texas Crim. App., 221; Rushing v. State, 25 Texas Crim. App., 613; Jacobs v. State, 42 Texas Crim. Rep., 358; Lacy v. State, 63 Texas Crim. Rep., 193; Downing v. State, 61 Texas Crim, Rep., 523, and others referred to in Branch's Ann. P. C., Sec. 184. No attack had been made by the appellant upon the credibility of the State's witness who was supported by proof of his good reputation. The only criticism of him which is found in the record was that developed by the State itself upon cross-examination on matters not connected with any evidence developed by the appellant.

The appellant presented by his own testimony and that of several witnesses a defense to the prosecution if his testimony was believed, and the facts upon which he relied were controverted by circumstances developed from the State's witnesses. On the issue thus formed it is not possible for this court to say that appellant's case was not prejudiced by the introduction of testimony that one of the witnesses who disputed his theory was a man bearing a good reputation for honesty, fair dealing and good citizenship, and that other men in the community with like character were giving their aid and sympathy to the prosecution. The admission of this testimony was clearly erroneous. It is not shown to have been harmless, and under the circumstances we are contrained to hold that it requires a reversal of the judgment, which is ordered.

*Reversed and remanded.*